[No. F022466. Fifth Dist. Feb. 2, 1996.]

ROBERT R. CAMPAGNA, Plaintiff and Appellant, v.
CITY OF SANGER, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part I.

COUNSEL

J. Steven Lempel for Defendant and Appellant.

Miles, Sears & Eanni and William J. Seiler for Plaintiff and Appellant.

## OPINION

STONE (W. A.), J.—This appeal from a judgment for declaratory relief concerns whether respondent, a former city attorney for the City of Sanger, is entitled to funds which he claims are his share of a contingency fee for litigation services. Appellant, the City of Sanger, claims whatever interest respondent may have in the funds was obtained in violation of Government Code section 1090[1] and the Political Reform Act, which prohibit public officials from being financially interested in any contract made by them in their official capacity. Appellant claims respondent must forfeit his interest because he violated the law. The trial court declared section 1090 and the Political Reform Act have no application in these circumstances and respondent is entitled to the funds.

### FACTS

In 1977, appellant entered into a contract with the law firm of Richard H. Hargrove to provide legal services as city attorney for a retainer fee of $1,000 per month. These services included attending meetings, being available one morning or afternoon a week to give advice and counsel to the council and city staff, providing advice and opinions by phone regarding city business, and drafting routine ordinances, rules, resolutions, and regulations. Expressly excluded from the services covered by the retainer agreement were, inter alia, "[a]ny proceedings requiring litigation." For litigation-related services, appellant agreed to compensate the firm "on a reasonable legal fee basis, depending upon the type of service rendered."

---

[1]All further statutory references are to the Government Code unless otherwise indicated.

Respondent was an associate and later a partner in the Hargrove firm and acted as deputy city attorney for appellant.

In 1980, a dispute arose between appellant and a number of chemical companies as a result of dibromochloropropane (DBCP) contamination of city wells. Acting upon the advice of respondent, appellant authorized respondent to investigate retaining the services of an outside law firm to represent appellant in prosecuting claims against the chemical companies. One of the requirements was that the matter would be handled on a contingency fee basis.

Respondent negotiated a contract for legal services which provided that his firm and the San Francisco firm of Hoberg, Finger, Brown, Cox & Molligan would prosecute the claims on behalf of appellant against the chemical companies on a contingency fee basis. The contract was approved December 10, 1980, by appellant's city council on the advice of Hargrove. Four other cities also retained the services of the two firms under separate but identical contingency fee contracts.

The contingency fee agreement explained how the total fee would be calculated based upon the amount of the total recovery, but did not explain how the two firms would split the fee. Respondent and the Hoberg firm had a separate oral agreement whereby respondent's firm would receive 35 percent of the total contingency fee. The Hoberg firm and respondent's firm later agreed that respondent's fee would be reduced to $420,000.

The DBCP litigation with the chemical companies lasted for 12 years. During that time, Hargrove and Campagna ceased acting as city attorney for Sanger. The firm dissolved in 1983 and the firm's interest in the outcome of the DBCP litigation was assigned to respondent. Respondent was appointed judge of the Kerman Justice Court in 1985. The Hoberg firm became Molligan, Cox & Moyer.

In 1992, just prior to trial in the DBCP litigation, appellant declared the contingency fee agreement violated section 1090. According to appellant, it was unlawful for respondent to have an interest in the contract which he negotiated on behalf of appellant in his official capacity as city attorney.

The DBCP litigation settled in 1993 for a total value of $16,250,000. The contingency fee for the attorneys under the fee agreement was $2,915,000. Despite its assertion that the contingency fee contract was void under section 1090, appellant agreed to pay the Molligan firm its share of the fees, but insisted Molligan not pay respondent his share of the fee, which had been reduced from 35 percent to $420,000. A special interest-bearing bank account was established pending resolution of the dispute over respondent's entitlement to the funds.

Respondent filed a complaint for declaratory relief in June 1993 to determine the rights of the parties, specifically, whether section 1090 rendered the contingency fee agreement void insofar as it provided for respondent to receive a fee.

Appellant filed a general denial and alleged several affirmative defenses. It proceeded on the theory that, despite the language in the DBCP contingency fee agreement which provided respondent's firm was to be compensated for litigation services related to the DBCP cases, appellant was never told nor did it anticipate respondent's firm would provide such services. Appellant understood the agreement was with the Hoberg firm to handle the litigation exclusively. Whatever services respondent's firm provided were covered by the retainer agreement between respondent's firm and appellant. Pursuant to an oral agreement with the Hoberg firm, respondent's firm was to receive a share of Hoberg's legal fees as nothing more than a "referral fee." Thus, respondent's financial interest was not in the nature of compensation for litigation services rendered on behalf of appellant, but as compensation for referring the DBCP cases to the Hoberg firm.

The trial court found (1) respondent had a right, under the 1977 contract for legal services with appellant, to negotiate his legal fees for services relating to "any proceedings requiring litigation"; (2) respondent assisted Hoberg in negotiating the contingency fee agreement with appellant; (3) the contingency fee agreement also provided for a portion of the fee to compensate respondent for the work he would do on the DBCP litigation; (4) appellant knew respondent would receive a fee for services related to that litigation; and, finally, (5) "the activity of fee negotiation by [respondent] with [appellant] does not come within the ambit of Government Code section 1090, or the Political Reform Act."[2] The court entered judgment in favor of respondent for $420,000, plus interest.[3]

---

[2]The court's "DECISION AFTER TRIAL" concludes:

"It is somewhat disingenuous of the defendant to now challenge the agreement they were more than happy to sign in 1980, when their only concern was that it cost them nothing up front regarding fees and costs to pursue their DBCP claim. [¶] The defendant now wishes to dissect the fee agreement ratifying the Mulligan [sic] firm's (formerly Hoberg firm) fee and to confiscate the plaintiff's fee. The defendant's use of the not so subtle threat of Government Code section 1090 to get the Mulligan [sic] firm to hand over to the defendant the plaintiff's portion of the legal fee is indefensible. It amounts to little more than a veiled threat to seek the return of the full fee if the Mulligan [sic] firm did not cooperate."

[3]In its opening brief appellant notes respondent is currently a judge of the Central Valley Municipal Court, and impliedly questioned the impartiality of the superior court. Appellant further stated it "would like to avoid a similar situation being repeated on appeal."

We view appellant's attack on the integrity of the superior court as insolent, indeed contemptuous. Appellant's thinly veiled threat to this court we view likewise.

DISCUSSION

I.*

*Right to Jury Trial*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II.

*Section 1090 and the Political Reform Act*

Section 1090 prohibits city officers' financial interest in any contract made in their official capacity: "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. Nor shall state, county, district, judicial district, and city officers or employees be purchasers at any sale or vendors at any purchase made by them in their official capacity."

■■■ For the purpose of construing section 1090, a contract "made" in an official capacity includes one in which a person governed by the section engages in "preliminary discussions, negotiations, compromises, [and] reasoning . . . ." (*Millbrae Assn. for Residential Survival* v. *City of Millbrae* (1968) 262 Cal.App.2d 222, 237 [69 Cal.Rptr. 251].) A person who violates section 1090, regardless of whether the violation is intentional, forfeits any rights or interests flowing from the illegal contract. (*Thomson* v. *Call* (1985) 38 Cal.3d 633, 646-652 [214 Cal.Rptr. 139, 699 P.2d 316].)

Section 87100 of the Political Reform Act (§ 81000 et seq.) prohibits public officials from participating in or using their position to influence a governmental decision in which they have a financial interest: "No public official at any level of state or local government shall make, participate in making or in any way attempt to use his official position to influence a governmental decision in which he knows or has reason to know he has a financial interest."

*Thomson* v. *Call, supra,* 38 Cal.3d 633, the leading case dealing with conflict of interest statutes, particularly section 1090, concerned a corporation's purchase of land from a city councilman as part of a development project. As a condition of project approval, the city required that land be set aside for a park. After purchasing the property, the corporation conveyed it to the city. Even though the councilman's interest in the transaction had been disclosed and he had followed the advice of the city attorney, the transaction

---

*See footnote, *ante,* page 533.

violated section 1090. The court found the contract void and required the councilman to forfeit the purchase price of the property, plus interest, to the city. "The case law supports strict enforcement of conflict-of-interest statutes. Mitigating factors—such as Call's disclosure of his interest in the transaction, and the absence of fraud—cannot shield Call from liability. Moreover, the trial court's remedy—allowing the city to keep the land and imposing a money judgment against the Calls—is consistent with California law and with the primary policy concern that every public officer be guided solely by the public interest, rather than by personal interest, when dealing with contracts in an official capacity. Resulting in a substantial forfeiture, this remedy provides public officials with a strong incentive to avoid conflict-of-interest situations scrupulously." (*Thomson* v. *Call*, *supra*, 38 Cal.3d at p. 650, fn. omitted.)

Appellant claims both sources of respondent's financial interest in the $420,000 are contracts which were made in violation of conflict of interest laws: the contingency fee agreement violated section 1090 and section 87100 because respondent negotiated for the fee while serving as appellant's city attorney, and his financial interest in the contingency fee flows from his agreement with the Hoberg firm which he also negotiated in his official capacity in violation of section 1090.

We begin our analysis by referring again to the trial court's findings:

1. Respondent was a party to the contingency fee agreement.

2. Appellant knew respondent was a party to the agreement and respondent was to share in the contingency fee.

3. Respondent had a right pursuant to the basic contract for legal services with appellant to negotiate his legal fees for services not covered by the basic contract, including litigation-related services.

4. Respondent assisted the Hoberg firm in negotiating the contingency fee agreement with appellant.

5. Respondent's negotiations with appellant were not covered by sections 1090 and 87100.

A. *The Contingency Fee Agreement*

The prohibition found in section 87100 does not apply to actions by public officials relating to the making of their own compensation or employment contracts. (Cal. Code Regs., tit. 2, § 18700, subd. (d)(3).) Nor is it unlawful for a public official to negotiate his or her own compensation. (Cal. Code Regs., tit. 2, § 18700.1, subd. (b)(3).) Appellant concedes public officials,

such as city attorneys, are not prohibited from entering into contracts with their public agencies to be paid additional compensation for services beyond their regular duties. But according to appellant, that is not what happened here.

Appellant claims respondent did not enter into an agreement *with* the City of Sanger to be compensated on a contingency fee basis for services beyond his basic retainer agreement. Rather, he negotiated the contingency fee contract *for* Sanger as its city attorney, and his partner advised appellant to approve the contract when he had an interest in the contract. Appellant's argument is contrary to the trial court's finding that respondent negotiated *with* appellant—not *for* appellant. Yet in its opening brief, appellant claims the facts are undisputed, the issues are purely legal and subject to de novo review. (*Rudd* v. *California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 951 [268 Cal.Rptr. 624]; *Cal-Air Conditioning, Inc.* v. *Auburn Union School Dist.* (1993) 21 Cal.App.4th 655, 667 [26 Cal.Rptr.2d 703].)

■ An ambiguity arises whenever an attorney and client enter into an agreement to render services beyond a basic retainer agreement. Whether or not an attorney-client relationship exists, the attorney necessarily negotiates the fee on his or her own behalf and not on behalf of the client. A conflict of interest for the attorney does not arise simply because there is a preexisting attorney-client relationship or the attorney represents the client on a related matter.

■ Insofar as the contingency fee agreement pertains to respondent's compensation for legal services on behalf of appellant in the DBCP litigation, we agree there is no conflict of interest and no violation of section 1090 or section 87100.

However, the failure of the contingency fee agreement to set forth how respondent's compensation would be determined gives us pause. Section 41804 provides the city attorney shall receive such compensation as is set by the legislative body. Section 37103 permits the city to contract specially and set the compensation for legal services independent of those provided by the city attorney. In this case the amount respondent would receive as compensation for legal services beyond his basic contract was set by the agreement between the Hoberg firm and respondent.

B. *The Referral Fee Agreement*

According to respondent's testimony, he approached the Hoberg firm in September of 1980 to discuss representation of several of respondent's

public entity clients in pursuing the DBCP litigation. Respondent told Hoberg his firm wanted a portion of the fee that might result from the litigation. Hoberg agreed and they negotiated the terms of a contingency fee agreement. Each public entity signed an identical, but separate agreement. Respondent admits he negotiated with Hoberg in his capacity as a city attorney. At the same time, Hoberg agreed respondent's firm would receive a referral fee of 35 percent of all legal fees received by the Hoberg firm. As we have noted, the fee was later reduced to $420,000.

According to appellant, section 1090 was violated because respondent was acting in his official capacity as city attorney for appellant when he negotiated the agreement with Hoberg regarding the amount he would receive if appellant agreed to retain the services of the Hoberg firm. Thus, his "financial interest" in the contingency fee agreement flows from a violation of section 1090 which forbids a city officer from having a financial interest in any contract made in his or her official capacity.

The trial court made no findings with regard to whether this agreement violated section 1090 even though this agreement was an issue at trial. Indeed, appellant's position was that respondent's firm was to receive a share of Hoberg's legal fees as nothing more than a "referral fee." Thus, respondent's financial interest was not in the nature of compensation for litigation services rendered on behalf of appellant, but as compensation for referring the DBCP cases to the Hoberg firm.

The trial court considered the "activity of the fee negotiation by [respondent] with [appellant]" and concluded section 1090 did not apply. However, the court did not consider the legality of the agreement between the Hoberg firm and respondent. The contingency fee agreement cannot be viewed in isolation. Respondent violated section 1090 by entering into the agreement to divide the contingency fee with the Hoberg firm; his "financial interest" in the contingency fee agreement rendered that agreement equally illegal. Stated another way, his "financial interest" under the terms of the contingency fee agreement cannot be determined without reference to his agreement with the Hoberg firm regarding division of the fee.

We can think of no circumstances under which the court could have found respondent was acting other than in his capacity as city attorney for appellant at the time he negotiated with Hoberg to receive a portion of the fee. Respondent suggests none. Respondent would not have been discussing the matter with the Hoberg firm had he not been retained by appellant and other public entities to find a litigation firm to handle the DBCP claims. Finding such a firm and negotiating with that firm to represent the city was unquestionably within the course and scope of his official business as city attorney.

Respondent cannot "change hats" in order to negotiate a referral fee.

■ "[T]he goals and policy concerns underlying section 1090 . . . [are] that 'no man can faithfully serve two masters whose interests are or may be in conflict': 'The law, therefore, will not permit one who acts in a fiduciary capacity to deal with himself in his individual capacity. . . . For even if the honesty of the agency is unquestioned . . . yet the principal has in fact bargained for the exercise of all the skill, ability and industry of the agent, and he is entitled to demand the exertion of all of this in his own favor.' . . ." (*Thomson* v. *Call, supra,* 38 Cal.3d at pp. 647-648.)

■ Former rule 2-108 of the Rules of Professional Conduct provides an attorney shall not divide a fee for legal services with another attorney unless the client consents in writing to employment of the other attorney "after a full disclosure has been made in writing that a division of fees will be made and the terms of such division." There is no evidence of disclosure here.

Although respondent was entitled to negotiate with appellant regarding compensation for litigation related services beyond his basic retainer agreement without violating section 1090 or the Political Reform Act, he negotiated his compensation with Hoberg—not with appellant. Respondent violated section 1090 when he entered into the referral fee agreement. Because the $420,000 is the benefit of that agreement, he forfeits his right to the funds. (*Thomson* v. *Call, supra,* 38 Cal.3d at pp. 646-647.)[4]

### DISPOSITION

Judgment reversed. Costs on appeal to appellant.

Ardaiz, P. J., and Vartabedian, J., concurred.

A petition for a rehearing was denied February 21, 1996, and the petition of appellant Robert R. Campagna for review by the Supreme Court was denied April 11, 1996. Mosk, J., was of the opinion that the petition should be granted.

---

[4]In light of our resolution of the issues raised by appellant, we need not address the issues asserted by respondent in his cross-appeal.