BILL LOCKYER Attorney General CLAYTON P. ROCHE Deputy Attorney General
THE HONORABLE ADAM B. SCHIFF, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:
May a city council enter into a development agreement with a joint powers agency where a city planning commissioner advises the city council with respect to the terms of the agreement and the commissioner's spouse serves as the city's representative on the joint powers agency?
 CONCLUSION
A city council may enter into a development agreement with a joint powers agency where a city planning commissioner advises the city council with respect to the terms of the agreement and the commissioner's spouse serves as the city's representative on the joint powers agency.
 ANALYSIS
A city council intends to enter into a development agreement (Gov. Code, §§ 65864-65869.5)[1] with a joint powers agency (§§ 6500-6599.1) which operates an airport. The agreement would cover expansion of the airport facilities. The city is a member of the joint powers agency, a separate public entity (§ 6507; 65 Ops.Cal.Atty.Gen. 618, 619 (1982)), and its representative on the governing board of the joint powers agency is married to a city planning commissioner whose duties would include advising the city council with respect to the terms of the agreement. May the city council execute the agreement under these circumstances? We conclude that it may.
The statute requiring our analysis is section 1090, which states:
 "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. . . ."
This statutory prohibition is absolute; it does not allow the financially interested officer or employee to abstain. (Thomson v. Call (1985)38 Cal.3d 633, 649-650.) However, the harsh consequences of section1090's prohibition have been ameliorated by the Legislature in specified circumstances involving "remote interests" (§ 1091) and "noninterests" (§ 1091.5). (See 81 Ops.Cal.Atty.Gen. 169, 172 (1998).)
A development agreement is the type of "contract" that would ordinarily come under the terms of section 1090. (82 Ops.Cal.Atty.Gen. 126, 129, fn. 3 (1999); 78 Ops.Cal.Atty.Gen. 230, 233-235 (1995).) Here, the city would be acting through its city council in executing the agreement. We are advised that no member of the city council has a financial interest in the development agreement. However, the prohibition of section 1090 has been extended to cover those who "participate" in the making of the contract by giving advice or being involved in preliminary discussions, negotiations, compromises, reasoning, planning, drawing of specifications, or the solicitation of bids. (Campagna v. City of Sanger (1996) 42 Cal.App.4th 533, 538; Millbrae Assn. for Residential Survival v. City of Millbrae (1968) 262 Cal.App.2d 222, 236-237; see also Stigall v. City of Taft (1962) 58 Cal.2d 565, 568-571; City Council v. McKinley (1978) 80 Cal.App.3d 204, 212; People v. Sobel (1974)40 Cal.App.3d 1046, 1052; Schaefer v. Berinstein (1956) 140 Cal.App.2d 278,291-292.) Since the city planning commissioner in question is to provide the city council with advice regarding the development agreement, the prohibition of section 1090 would apply to such activity.
Having determined that the development agreement constitutes a "contract" and the city planning commissioner's advice would be covered as part of the "making" of the contract, we turn to the issue of whether the requisite "financial interest" is present here. The city planning commissioner receives no compensation for serving on the planning commission. However, the commissioner's spouse is compensated as the city's representative on the governing board of the joint powers agency. We have previously concluded that a spouse's community property interest in the other spouse's compensation may qualify as a prohibited "financial interest." (78 Ops.Cal.Atty.Gen., supra, at p. 237; see also Nielsen v. Richards (1925) 75 Cal.App. 680; 75 Ops.Cal.Atty.Gen. 20 (1992); 69 Ops.Cal.Atty.Gen. 255 (1986); 69 Ops.Cal.Atty.Gen. 102 (1986); 65 Ops.Cal.Atty.Gen. 305, 308 (1982).)
Nevertheless, here, there is simply no "financial interest" in the development agreement by either spouse. The compensation received by the spouse is for representing the city's interests on the joint powers agency. Both spouses have been appointed by the city council to further the best interests of the city. There is no "private gain" to be realized that would cause the planning commissioner to have "divided loyalties" in rendering advice to the city council. The agreement, no matter what its ultimate terms, will not determine the level of compensation of either spouse or in any way affect the financial resources of either.
The present circumstances may be distinguished from situations where the requisite financial interest derives from an economic relationship between the official and the entity contracting with official's public agency, such as when the official is (1) a creditor of the company contracting with the public agency (Moody v. Shuffleton (1928)203 Cal. 100), (2) the president and stockholder of the entity contracting with the public agency (City Council v. McKinley, supra,80 Cal.App.3d 204), (3) an employee of a public entity contracting with the public agency (78 Ops.Cal.Atty.Gen. 362 (1995)), (4) a partner of the firm contracting with the public agency (77 Ops.Cal.Atty.Gen. 112 (1994)), or (5) an officer of the entity contracting with the public agency (58 Ops.Cal.Atty.Gen. 670 (1975)). In each of these cases, the contract would directly benefit the official's source of income and thus indirectly the official. (Cf. 69 Ops.Cal.Atty.Gen. 255, supra; 69 Ops.Cal.Atty.Gen. 102, supra; 65 Ops.Cal.Atty.Gen. 305 (1982).)
When the financial interest is direct, section 1090 clearly applies. (66 Ops.Cal.Atty.Gen. 376 (1983) [level of compensation of officials tied to terms of the contract].) The statute, however, also applies in the above situations where the financial interest is indirect. (See Thomson v. Call, supra, 38 Cal.3d at p. 645.) In the often cited case of Fraser-Yamor Agency, Inc. v. County of Del Norte (1977)68 Cal.App.3d 201, a county supervisor had a financial interest in an insurance agency doing business with the county. The court rejected the supervisor's claim that because he agreed not to directly benefit from any insurance contracts with the county, section 1090 should not apply. The court analyzed the issue as follows:
 "Although Fraser did not receive any part of these commissions he nevertheless continued to have a direct financial interest in the business affairs of the [insurance] agency and to be an active participant in the conduct of its business. We do not apprehend that Fraser divested himself of his financial interest in the agency merely because he did not share in the commissions derived by the agency from the county's insurance business or merely because none of these commissions were used to defray the operating expenses of the agency. Fraser has and has had an investment in the agency represented by his partnership and shareholder interests. His interest in the agency and in any contracts from which it derives a pecuniary benefit is clearly a financial one because the financial success of the agency inures to his personal benefit. Such success, in turn, enhances the value of Fraser's interest in the agency. The record discloses that the volume of business procured and placed by the agency is an important consideration in the agency's relationship with the insurance companies. If the volume of business produced by the agency is profitable the insurance companies pay an amount to the agency on a basis of profit-sharing over and above the ordinary commissions." (Id., at pp. 214-215.)
In the present circumstances, in contrast, we find no actual or potential pecuniary gain, direct or indirect, that would inure to either of the spouses in question as a result of executing the development agreement. Because this is a fairly unique situation where both spouses have been appointed by the city council to represent the interests of the city in different capacities, there is simply no potential for "self-dealing" here. Both spouses are free to exercise "all the skill, ability and industry" they possess on behalf of the city (Thomson v. Call, supra, 38 Cal.3d at p. 648; see also Campagna v. City of Sanger, supra, 42 Cal.App.4th at p. 542) since they have no private economic relationship to exploit through execution of the agreement (76 Ops.Cal.Atty.Gen. 118, 119 (1993) ["Section 1090 is concerned with financial interests . . . which would prevent officials from exercising absolute loyalty and individual allegiance in furthering the best interests of their public agencies"]). We need not consider, therefore, which specified "noninterest" (§ 1091.5) or "remote interest" (§ 1091), if any, would be applicable to the spouses in question.[2]
We conclude that a city council may enter into a development agreement with a joint powers agency where a city planning commissioner advises the city council with respect to the terms of the agreement and the commissioner's spouse serves as the city's representative on the joint powers agency.
[1] All references hereafter to the Government Code are by section numbers only.
[2] Because the spouse serving on the city planning commission would be acting only in an advisory capacity and would not be required to approve the development agreement (compare 77 Ops.Cal.Atty.Gen. 112, supra), her abstention from the decision-making process would avoid section1090's proscription (see 82 Ops.Cal.Atty.Gen., supra, at pp. 129-130). We also note that we need not discuss the conflict of interests provisions of the Political Reform Act of 1974 (§§ 87100-87500) since the compensation in question would be received from a public agency (see §§ 82030, subd. (b)(2), 87103). Also inapplicable would be the common law prohibition against conflict of interests and self-dealing; neither spouse would be using his or her official position for personal advantage. (See Clark v. City of Hermosa Beach (1996) 48 Cal.App.4th 1152,1170-1171.)