BILL LOCKYER Attorney General SUSAN DUNCAN LEE Deputy Attorney General
THE HONORABLE WILMA CHAN, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:
Is a person who was hired by a city as a consultant in the process of forming a business improvement district precluded from being hired after formation of the district by a nonprofit corporation that is under contract with the city to manage the district?
 CONCLUSION
A person who was hired by a city as a consultant in the process of forming a business improvement district is not precluded from being hired after formation of the district by a nonprofit corporation that is under contract with the city to manage the district.
 ANALYSIS
The question presented for resolution concerns a consultant who was hired by a city to work with business owners in the process of forming a special assessment district under the Property and Business Improvement District Law of 1994 (Sts. Hy. Code, §§ 36600-36671; "Act").[1] After the district is formed, may the person be hired by a nonprofit corporation that is under contract with the city to manage the district? We conclude that the nonprofit corporation may hire the former consultant.
The purpose of a business improvement district is to promote economic revitalization in a specific area of a community. It allows a city to fund business-related improvements and activities through the levy of special assessments upon the businesses and properties that will benefit from the improvements. (§ 36601.)[2] Typical improvements include parking, lighting, signs, landscaping, pedestrian plazas, and security and maintenance services. (§§ 36610, 36613; see Epsteinv. Hollywood Entertainment Dist. II Bus. Improvement Dist.
(2001) 87 Cal.App.4th 862, 865.)
A city initiates proceedings to form a business improvement district "[u]pon the submission of a written petition, signed by the property or businesses owners in the proposed district who will pay more than 50 percent of the assessments proposed to be levied. . . ." (§ 36621, subd. (a).) The petition must be accompanied by a summary of a plan for the proposed operations of the district. (§ 36621, subd. (b).) The plan includes a description of the boundaries of the district, a list of each business or property to be assessed, the improvements and activities to be funded, sources of financing, a schedule for implementation and completion of the improvements, and rules and regulations for the district. (§ 36622.)
If the city decides to go forward with the proposal, the city must hold a public hearing on the plan, with notice to all property and business owners affected. (§§ 36623-36626.) The city must also provide all affected property and business owners with ballots on which to register their support or opposition to the plan. (§ 36623; Gov. Code, § 53753.) Formation of the district may not proceed if a majority of the affected property and business owners vote in protest of the plan. (§ 36625, subd. (a)(4).)
At the conclusion of the public hearing, the city may adopt or reject the proposal, or revise it. (§ 36624.)[3] Once a business improvement district is established, the district may be administered either directly by the city, or by an "owners' association" that is under contract with the city. Section 36651 provides:
 "The management district plan may, but is not required to, state that an owners' association will provide the improvements or activities described in the management district plan. If the management district plan designates an owners' association, the city shall contract with the designated nonprofit corporation to provide services."
Section 33614.5 describes an "owners' association" as follows:
 "`Owners' association' means a private nonprofit entity that is under contract with a city to administer or implement activities and improvements specified in the management district plan. An owners' association may be an existing nonprofit entity or a newly formed nonprofit entity. An owners' association is a private entity and may not be considered a public entity for any purpose, nor may its board members or staff be considered to be public officials for any purpose. Notwithstanding this section, an owners' association shall comply with the Ralph M. Brown Act . . . at all times when matters within the subject matter of the district are heard, discussed, or deliberated, and with the California Public Records Act . . . for all documents relating to activities of the district."
An owners' association must file annual reports describing the improvements and activities to be provided in the coming year, a description of the funding for those improvements and activities, and any proposed modifications to the plan. (§ 36650.)[4]
The term of a newly formed district may not exceed five years. (§ 36622, subd. (h).) An expired district may be renewed for up to ten years by following the same procedures prescribed for the creation of a new district. (§§ 36622, subd. (h); 36630.)
A district formation consultant is frequently retained, either by the city or by the owners' association, to assist in the steps necessary to bring a business improvement district into existence. These steps include canvassing and meeting with affected property and business owners, circulating the petition necessary for initiating proceedings, collecting property owner and map information, and drafting the management plan for the proposed district.
After formation of the district, the owners' association typically hires someone to manage the district on its behalf. May this person be the same person who was previously hired by the city as a consultant in the process of forming the district? The answer to this question centers upon the possible application of Government Code section 1090 to the contract between the owners' association and the former consultant. This statute generally prohibits public officers and employees from participating in the negotiation and execution of any contract in which they have a financial interest. It provides in part:
 "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."
Government Code section 1090 codifies the common law prohibition against "self-dealing" by public officials. (See Stats. 1851, ch. 136, § 1; Stigall v. City of Taft (1962)58 Cal.2d 565, 571; City of Oakland v. California Const. Co.
(1940) 15 Cal.2d 573, 576; Breakzone Billiards v. City ofTorrance (2000) 81 Cal.App.4th 1205, 1208; Terry v. Bender
(1956) 143 Cal.App.2d 198, 206-207; Stockton P. S. Co. v.Wheeler (1924) 68 Cal.App. 592, 597.) The purpose of the prohibition is to ensure that public officials making government contracts "not be distracted by personal financial gain from exercising absolute loyalty and undivided allegiance to the best interest of the entity which they serve. . . ." (66 Ops.Cal.Atty.Gen. 156, 157 (1983); see Thorpe v. Long BeachCommunity College Dist. (2000) 83 Cal.App.4th 655, 659;Fraser-Yamor Agency, Inc. v. Del Norte (1977)68 Cal.App.3d 201, 215.) To achieve its purpose, Government Code section 1090
is to be liberally construed to eliminate the possibility of divided loyalties, and is not limited to situations involving actual fraud or dishonesty. (People v. Honig (1996)48 Cal.App.4th 289, 313-317.)
Here, Government Code section 1090 would have no application to the first contract between the city and the consultant for his work during the district formation period. While the consultant would have a financial interest in this contract, he would not be participating in the making of the contract in any official capacity; he would be contracting only in his individual capacity. (See Thompson v. Call (1985) 38 Cal.3d 633, 649;Campagna v. City of Sanger (1996) 42 Cal.App.4th 533, 539-542.)
However, with respect to the second contract between the owners' association and the now former consultant, an argument could be made that he would be participating in the making of this contract in his official capacity as an officer or employee of the city. It has long been held that the phrase "any contract made by them" contained in Government Code section 1090 is to be broadly defined to include various activities leading up to the execution of a contract, including preliminary discussions, negotiations, compromises, reasoning, and planning. (See Stigallv. City of Taft, supra, 58 Cal.2d at pp. 569-571; City Councilv. McKinley (1978) 80 Cal.App.3d 204, 212-213; People v. Sobel
(1974) 40 Cal.App.3d 1046, 1052; Millbrae Assn. for ResidentialSurvival v. City of Millbrae (1968) 262 Cal.App.2d 222, 237;Schaefer v. Berinstein (1956) 140 Cal.App.2d 278, 291-292; 86 Ops.Cal.Atty.Gen. 142, 145, fn. 3 (2003); 85 Ops.Cal.Atty.Gen. 34, 35 (2002); 80 Ops.Cal.Atty.Gen. 41, 42-44 (1997); 66 Ops.Cal.Atty.Gen., supra, at pp. 159-162.)
As for his being an officer or employee of the city during the district formation period, it could be argued that the terms of Government Code section 1090 may be applied to consultants and independent contractors when they are advising government officials on matters of public policy, or when they are exercising judgment on behalf of a public entity. (70 Ops.Cal.Atty.Gen. 271, 273-274 (1987); 46 Ops.Cal.Atty.Gen. 74, 79 (1965); see People v. Gnass (2002) 101 Cal.App.4th 1271,1298-1301; Campagna v. City of Sanger, supra, 42 Cal.App.4th at pp. 535, 541; but see NBS Imaging Systems, Inc. v. State Bd. ofControl (1997) 60 Cal.App.4th 328, 338-339, fn. 13 [stating, in dicta, "Government Code section 1090 applies only to specified public officers and employees" and not to independent contractors].)
In these particular circumstances, however, we need not determine whether the former consultant would be participating in the making of the contract with the owners' association in his official capacity as an officer or employee of the city. The entity contracting with him is not the city but rather the owners' association of which he is neither an officer nor an employee at the time of negotiating his employment contact. The Act specifically contemplates that an owners' association may participate both in the process of forming a business improvement district and in the management of the district after it has been created. (See §§ 36614.5, 36651; see also Epstein v. HollywoodEntertainment Dist. II Bus. Improvement Dist., supra,87 Cal.App.4th 862 [same group that formed district also managed district].) As quoted above, section 33614.5 provides in part: "An owners' association is a private entity and may not be considered a public entity for any purpose, nor may its board members or staff be considered to be public officials for any purpose." Section 36603.5 additionally states: "Any provision in this part that conflicts with any other provision of law shall prevail over the other provision of law."
Accordingly, the phrase "for any purpose" contained in section 33614.5 removes the execution of contracts by an owners' association from the requirements imposed by Government Code section 1090. Here, we have a private contract being made by a private entity, even though the entity is acting under a contract with the city. The existence of the owners' association in executing the contract cannot be disregarded so as to treat the contract as being made by the city. Although the Legislature has expressly required owners' associations to be subject to the open meeting requirements of the Ralph M. Brown Act and the records disclosure requirements of the California Public Records Act (§ 33614.5), it has not made their contracts subject to the strictures of Government Code section 1090. Hence, in this case, the former consultant may be retained by the owners' association to assist in administering the district once the district has been formed.[5]
We conclude that a person who was hired by a city as a consultant in the process of forming a business improvement district is not precluded from being hired after formation of the district by a nonprofit corporation that is under contract with the city to manage the district.
[1] All further references to the Streets and Highways Code are by section number only.
[2] For purposes of the Act, "city" includes a city, a county, a city and county, or a joint powers agency consisting of cities and counties. (§ 36608.)
[3] Proposed assessments may only be revised by reducing them, and proposed boundaries may only be revised by excluding territory that would not benefit from the proposed improvements or activities. (§ 36624.)
[4] The city may approve the report as filed, or may modify it. (§ 36650, subd. (c).) An owners' association may also request modifications of the management district plan at any time. (§ 36635.) Any modifications may be made only upon proper notice and hearing. (§§ 36636-36637.)
[5] In an informal letter of advice (Cal. Atty. Gen., Indexed Letter, No. IL 03-1002 (Oct. 2, 2003)), we did not consider the application of section 33614.5, and for that reason, the letter is disapproved.