[No. A093687. First Dist., Div. Four. Oct. 26, 2001.]

MID-CENTURY INSURANCE EXCHANGE, Plaintiff and Appellant, v. DAIMLER-CHRYSLER CORPORATION et al., Defendants and Respondents.

COUNSEL

Maguire & Gahan and Daniel G. Maguire for Plaintiff and Appellant.

Becherer, Kannett & Schweitzer, Mark S. Kannett and Stephen M. Levine for Defendants and Respondents.

OPINION

**REARDON, Acting P. J.**—If, prior to any litigation, an insurer pays the policy limits on a potential claim against its insured in return for a complete release of all claims, does Code of Civil Procedure[1] section 877.6 bar its later bid for equitable indemnity against other tortfeasors who enter into good faith settlements with the injured party after litigation commences against them? We conclude it does and hence affirm the judgment dismissing the equitable indemnity action of appellant Mid-Century Insurance Exchange (Mid-Century).

[1]All statutory references are to the Code of Civil Procedure.

## I. Background

On February 7, 1998, Frank Eggloff owned a 1994 Chrysler Le Baron. Mid-Century was the automobile insurance liability carrier for Mr. Eggloff under a policy which provided $100,000 liability insurance. That day, Mr. Eggloff and his friend, Andreas Von Lowtzow, were attempting to start the car. The hood of the engine was raised. The battery suddenly exploded in Mr. Von Lowtzow's face, causing serious injuries to his face and eyes.

Mr. Eggloff notified Mid-Century of a potential claim of liability against him as owner of the vehicle. Mid-Century settled Mr. Von Lowtzow's claim at the policy limits and obtained a release of all liability before Mr. Von Lowtzow filed suit.

After settling with Mr. Eggloff, Mr. Von Lowtzow filed suit against Daimler-Chrysler Corporation (formerly known and sued as Chrysler Corporation) (Chrysler), St. Claire Cadillac-Oldsmobile and Johnson Controls Battery Group, Inc. (Johnson Controls).[2] (Super. Ct. No. 994398.) Mid-Century, in turn, sued Chrysler for equitable indemnification and later added Johnson Controls as a defendant. (Super. Ct. No. 999983.) The two actions were consolidated in March 1999.

On November 10, 1999, after eight days of trial, respondents settled with Mr. Von Lowtzow for $450,000. They sought, and obtained, determinations that the settlements were in good faith and moved to dismiss under section 877.6. Mid-Century indicated it had no intention of disputing the good faith nature of the settlements.

The trial court gave Mid-Century the opportunity to brief the legal effect of the settlement on its indemnity action and allowed both parties to file amended pleadings. Mid-Century filed an amended complaint for equitable indemnity and respondents ultimately filed a cross-complaint against Mr. Eggloff and Mid-Century. The trial court granted a dismissal based on the section 877.6 good faith settlement. This appeal followed.

## II. Discussion

### A. *Legal Framework*

Section 877.6 provides in part: "(a)(1) Any party to an action in which it is alleged that two or more parties are joint tortfeasors or co-obligors . . .

---

[2]Respondents herein are Chrysler and Johnson Controls.

shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors . . . . [¶] . . . [¶] (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." (§ 877.6, subds. (a)(1), (c).)

■ Dual objectives underlie section 877.6: encouragement of voluntary settlement, and promotion of equitable cost sharing among multiple parties at fault. (*Far West Financial Corp. v. D & S Co.* (1988) 46 Cal.3d 796, 810 [251 Cal.Rptr. 202, 760 P.2d 399] (*Far West*).) To measure up to the "good faith" yardstick, the settlement must accommodate both policies. Thus, in order to secure immunity from contribution or comparative indemnity, the settling defendant must settle "within [a] reasonable range" (*Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 499 [213 Cal.Rptr. 256, 698 P.2d 159]) or in the " 'ballpark' " of his or her proportional share of liability for the plaintiff's injuries, keeping in mind the facts and circumstances of the case (*id.* at pp. 499, 501, fn. 9).

Nor are the interests of the nonsettling defendant overlooked. To counterbalance the loss of comparative indemnity rights, the statutory scheme affords the nonsettling defendant a setoff against judgment in the amount specified in the release or dismissal of the settling defendant, or the amount of consideration paid, whichever is more. (§ 877, subd. (a).)

■ When an allegedly vicariously liable tortfeasor settles early in order to limit potential liability and then pursues an indemnity claim, he or she can challenge the good faith of a subsequent settlement. Assessing the good faith of the proposed settlement, the trial court must take into account "whether the proposed settlement is within the reasonable range of the settling tortfeasor's total proportional liability, taking into account the settling tortfeasor's potential liability for indemnity to the allegedly vicariously liable tortfeasor as well as its remaining liability to the plaintiff." (*Far West, supra,* 46 Cal.3d at p. 816.)

■ Even a remote, prelawsuit settlement is not outside the ambit of section 877.6, and a good faith finding is not precluded under these circumstances. (*County of Los Angeles v. Guerrero* (1989) 209 Cal.App.3d 1149, 1152, 1155 [257 Cal.Rptr. 787].) Moreover, the presence of nonsettling defendants is not required. Nothing in section 877.6 mandates that there be

defendants in an action who have not settled with a plaintiff at the time good faith confirmation is sought. Thus, a later-added defendant, or the last defendant to settle, can call on section 877.6 to extinguish indemnity claims by joint tortfeasors who have already settled. (*Wilshire Ins. Co. v. Tuff Boy Holding, Inc.* (2001) 86 Cal.App.4th 627, 640 [103 Cal.Rptr.2d 480].)

B.  *Analysis*

■  Mid-Century insists that section 877.6 does not bar its indemnity claim against respondents because neither it nor Mr. Eggloff is a joint tortfeasor within the meaning of the statute.

To begin with, we realize that insurers, *in their role as insurers*, are not tortfeasors or joint tortfeasors for purposes of section 877.6. (See *Hartford Accident & Indemnity Co. v. Superior Court* (1994) 29 Cal.App.4th 435, 441 [34 Cal.Rptr.2d 520] [claims for contribution among insurers providing overlapping coverage do not implicate fault principles and thus the protective cloak of § 877.6 does not shelter them].) However, Mid-Century is the insurer of Mr. Eggloff, an alleged tortfeasor. Under equitable subrogation principles, the insurer steps into the shoes of its insured. This means the insurer is entitled to no greater rights than the insured and is subject to the same defenses assertable against the insured. (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1291-1292 [77 Cal.Rptr.2d 296]; see also *Wilshire Ins. Co. v. Tuff Boy Holding, Inc., supra,* 86 Cal.App.4th at pp. 640-641, fn. 11.)

Further, contrary to Mid-Century's assertion, Mr. Eggloff is an alleged joint tortfeasor under the statute. Mid-Century accuses defendants of "bad faith" and mounting a "legal ambush" by pursuing a "belated" cross-complaint naming Mr. Eggloff as a defendant, and then moving to dismiss based on the settlement. Mid-Century apparently forgets that it was the court that allowed the parties to amend their pleadings, after settlement was proposed. Moreover, defendants initially decided not to bring Mr. Eggloff into the litigation because they concluded *he* would have been entitled to a good faith finding and with that in hand, "he would be gone."

More to the point, the court was clear that the cross-complaint was irrelevant to its analysis and that all statutory requirements were met to invoke the section 877.6 bar to Mid-Century's indemnity claim. First, there were multiple alleged joint tortfeasors, namely Chrysler, Johnson Controls and St. Claire Cadillac-Oldsmobile by way of suit, and Mr. Eggloff by way of the claim asserted against him that Mid-Century settled. St. Claire also asserted a cross-claim against Chrysler. As well, Mid-Century, standing in Mr. Eggloff's shoes, sued respondents and the two suits were consolidated.

On the issue of Mr. Eggloff's status as an alleged joint tortfeasor, the court found he was a potential joint tortfeasor, and concluded for purposes of section 877.6 this was enough. It reasoned that absent the prelitigation payout and release, responsible plaintiff's counsel would have named Mr. Eggloff as defendant on a negligence claim against him as owner and operator of the vehicle. It was that potential claim which the court regarded as "the functional equivalent of an actual claim." This analysis is sound.

All that is required for a good faith settlement hearing is that two or more parties are *alleged* to be joint tortfeasors. (§ 877.6, subd. (a).) Mid-Century's original complaint alleged that Mr. Eggloff owned and maintained the car and Mr. Von Lowtzow made a claim against him that as the owner of the car causing the injury, "Eggloff was liable to [V]on Lowtzow." Mid-Century paid the policy limits and "all claims" against Mr. Eggloff were released. Later, after respondents settled, Mid-Century amended its complaint to indicate that it paid out in view of anticipated defense costs in the event Mr. Von Lowtzow "made a claim against Mr. Eggloff," and "in consideration of the catastrophic nature of his injuries and the fact that the negligently designed battery exploded in his face." At the good faith hearing, counsel for Mid-Century stated that there never was a "formal" claim by Mr. Von Lowtzow against Mr. Eggloff. Rather, Mr. Eggloff notified his insurer, which then processed the claim "as if there could have been a potential claim and handled the claim and agreed to pay the policy limits."

That is just the point. It matters not whether Mr. Eggloff in fact was negligent, but whether he was a potential tortfeasor. He was, by virtue of his ownership of the car, engaging Mr. Von Lowtzow to help him start the car and Mr. Von Lowtzow's claim against him—whether formal or not—under the insurance policy. The trial court here concluded, after listening to the eight days of testimony preceding settlement, that a prima facie case had been made against Mr. Eggloff as a potential tortfeasor. Specifically, the court alluded to evidence that Mr. Eggloff was "cranking and Von Lowtzow is standing in dangerous proximity." "He set up the situation where Mr. Von Lowtzow had the hood up, was peering in to see if he could figure out what was wrong while he turned the ignition key. He turned the ignition key with full knowledge Mr. Von Lowtzow was standing there. That is for sure."

Second, when respondents settled with Mr. Von Lowtzow they were statutorily entitled to a hearing on the issue of the good faith of their settlement. (§ 877.6, subd. (a).) Mid-Century did not challenge the good faith determination. Instead, it fought applicability of the statute in the first instance and lost.

Had Mid-Century asserted lack of good faith based on the amount of the settlement, it might have enjoyed a better result. The settlement terms did not factor in Mid-Century's indemnity claim. Defense counsel specifically stated that any liability on respondents' part to Mid-Century was "over and above" the proposed settlement amount. Nevertheless, the court should have considered whether the proposed settlement was within the reasonable range of respondents' "total proportional liability," taking into account their "potential liability for indemnity to the allegedly vicariously liable tortfeasor [i.e., Mid-Century, standing in for Mr. Eggloff] as well as its remaining liability to the plaintiff." (*Far West, supra,* 46 Cal.3d at p. 816.) This the court did not do and Mid-Century failed to object. Had the court looked at the total proportionate liability and determined that the proposed settlement was not within the appropriate ballpark figure, it might have withheld the good faith blessing and Mid-Century could have proceeded with its equitable indemnity claim.

The judgment of dismissal is affirmed.

Sepulveda, J., and Kay, J., concurred.