[No. B173070. Second Dist., Div. Five. Jan. 25, 2006.]

HENRY C. GACKSTETTER, Plaintiff and Appellant, v.
PATRICK FRAWLEY et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.D.

Counsel

H. Clay Reavis, Jr., and Deborah J. Dewart for Plaintiff and Appellant.

Law Offices of Zilinskas & Woosley, Victor G. Zilinskas and Eric A. Woosley for Defendants and Appellants.

Opinion

MOSK, J.—

## I. INTRODUCTION

Attorneys settled a malpractice and negligent misrepresentation action against them by trust beneficiaries and obtained a good faith settlement determination order pursuant to Code of Civil Procedure section 877.6.[1] In a separate probate proceeding, the trust beneficiaries sought relief against the trustee of those trusts for certain derelictions of his trust duties. This dispute was settled. In the case before us, the attorneys were sued by the trustee, whom the attorneys had represented, for various torts related to the services provided the trustee in connection with the trusts. The trial court denied the attorneys' summary judgment and summary adjudication motions to bar claims based on the good faith determination order.

The attorneys cross-claimed against the trustee for equitable indemnity for monies paid by the attorneys to settle the beneficiaries' claims against them. The jury found for the trustee against the attorneys, but found that because the trustee was 50 percent at fault and the attorneys were entitled to equitable indemnification, the judgment should be reduced accordingly. The trial court refused to modify the jury's findings, and a judgment in favor of the trustee for damages was entered.

In the published portion of the opinion, we hold that the attorneys can appeal from the denial of the summary judgment and summary adjudication motions and that, because of the good faith determination, the trial court erred in not granting summary judgment in favor of the attorneys. We conclude that a good faith determination may bar the claims of an unnamed party; the trustee and the attorneys were joint tortfeasors; the trustee's claims were either for indemnification or in effect for indemnification; and therefore, under section 877.6, the good faith settlement barred the trustee's claims. Accordingly, we reverse the judgment on the trustee's first amended complaint.

---

[1] All statute references are to the Code of Civil Procedure unless otherwise stated.

In the unpublished portion of the opinion, we affirm the judgment on the attorney's cross-complaint against the trustee for equitable indemnity. The jury verdict on the cross-complaint is supported by substantial evidence. We remand the matter to the trial court to enter a judgment in conformity with this opinion.

## II. BACKGROUND

### A. *General Allegations and Proceedings*

In 1987, defendant, Attorney Patrick Frawley (Frawley),[2] prepared documents establishing two trusts for Agnes Gordon. One trust, the Agnes Gordon Trust (Sisters' Trust), was to benefit Ms. Gordon's sisters (Sisters) and to include a house (the Marlin Place Property) so that one of the Sisters would always have a home. The other trust, the Billy and Agnes Gordon Trust (Charitable Trust), was a residual charitable trust created to establish a program to train dogs to assist hearing-impaired persons. After the creation of the Sisters' Trust, Agnes Gordon allegedly revoked her will. That will provided for distributions comparable to those provided for by the trusts. Plaintiff Henry C. Gackstetter (Gackstetter), a close friend of Agnes Gordon and her late husband, was the trustee for both trusts. After Agnes Gordon died, Frawley represented her executor and niece, Patricia Murphy (Murphy), in the probate of the estate. According to Gackstetter, Frawley provided legal services to Gackstetter as trustee of the trusts and individually.

By mistake, before Agnes Gordon's death, Frawley had transferred the Marlin Place Property into the Charitable Trust instead of the Sisters' Trust. One of the Sisters continued to live in the house, and Gackstetter used funds in the Charitable Trust to maintain the residence. Gackstetter claimed to have made personal loans to the Charitable Trust and to have repaid himself out of trust funds. Gackstetter also mortgaged the Marlin Place Property to obtain $104,000 for himself. He said that money, or some of it, was later used to repay his loans. As trustee for the trusts, Gackstetter failed to prepare accountings, tax returns, and other necessary documents and otherwise failed to maintain proper records. It was necessary to open a probate proceeding for the Agnes Gordon estate because the Sisters' Trust was not funded, and assets had to be redistributed in view of Frawley's error. Various proceedings and actions ensued.

### 1. *Sisters' Petition Against Gackstetter*

In the Agnes Gordon probate proceeding, on May 14, 1998, the Sisters filed a petition (Murphy Petition) against Gackstetter alleging a breach

[2] Reference to Frawley is to Patrick Frawley and his law firm and codefendant Marc Brauer.

of fiduciary duty in connection with the Marlin Place Property, the taking of money generated by placing a mortgage on that property, and for failure to provide accountings for the trusts. By their petition, the Sisters sought an accounting, appointment of successor trustee, return of trust assets, surcharge of the trustee, and to quiet title. Frawley initially represented Gackstetter in the Murphy Petition proceeding, and Gackstetter signed a retainer fee agreement with Frawley in connection with that representation. Frawley withdrew as counsel after it was disclosed that he caused the Marlin Place Property to be placed in the wrong trust. Gackstetter alleged he thereafter became aware of his own failures to file trust tax returns, prepare trust accountings, and maintain trust records properly. Because of these failures, when records were destroyed in an earthquake, hundreds of hours were required to make proper accountings and to defend the Murphy Petition. In 1999, the Attorney General made claims against Gackstetter in the probate proceeding in connection with alleged mishandling of the Charitable Trust.[3] On July 13, 2000, Gackstetter settled the Murphy Petition claims against him. As part of the settlement, Gackstetter caused the transfer of the Marlin Place Property to the Sisters' Trust. Gackstetter, although attributing his acts and omissions to Frawley, also settled with the Attorney General on July 13, 2000, by, inter alia, waiving any claim for fees and reimbursement. The probate court approved the settlements.

### 2. *Sisters' Action Against Frawley*

On July 23, 1999, the Sisters sued Patrick Frawley and Doe defendants for malpractice and negligent misrepresentation in connection with placing the Marlin Place Property in the wrong trust and failing to disclose this error. The Sisters also alleged in this action that Frawley represented Gackstetter as trustee, that Gackstetter made misrepresentations regarding the property and took money by placing a mortgage on it, and that claims against Gackstetter had been made by the Murphy Petition. The parties stipulated *for the consolidation of* discovery in the Murphy Petition proceeding against Gackstetter and in the Sisters' action against Frawley. On July 20, 2000, after the instant case by Gackstetter against Frawley had been filed, Frawley settled the Sister's action against him for $104,000, the amount of the encumbrance Gackstetter had placed on the Marlin Place Property.[4] After giving notice to Gackstetter of an application for good faith settlement,

---

[3] "The role of the Attorney General is as an overseer of charities representing the public, the ultimate beneficiary of the charitable trust [citation]. His duty is to remedy abuses in trust management [citation]. He is a necessary party to proceedings affecting the disposition of the assets of a charitable trust [citation]." (*Estate of Horton* (1970) 11 Cal.App.3d 680, 685 [90 Cal.Rptr. 66]; see *Holt v. College of Osteopathic Physicians & Surgeons* (1964) 61 Cal.2d 750, 753, 755 [40 Cal.Rptr. 244, 394 P.2d 932].)

[4] The settlement agreement identifies as parties "Patrick Frawley, an individual, on behalf of himself and the law firm of Frawley & Brauer . . . and their agents . . . ."

Frawley obtained from the trial court a September 1, 2000 order granting the application for good faith settlement.

### 3. *Gackstetter's Action Against Frawley—The Instant Action*

On May 5, 2000, Gackstetter, on behalf of himself, sued Frawley in the instant action for improperly advising Gackstetter of his duties and concealing the improper transfer of the Marlin Place Property. The Attorney General intervened in this case, making claims against Frawley that he "aided and abetted Gackstetter in breaching his trust." Frawley settled the Attorney General's claims.

Specifically, in his first amended complaint against Frawley, Gackstetter alleged Frawley concealed the incorrect conveyance of the Marlin Place Property, improperly advised him as to his duties and obligations as trustee, and committed other acts resulting in improper distributions that adversely affected the funding of the Charitable Trust. Gackstetter alleged that as a result of Frawley's actions, the trusts were damaged and that he was sued by the Sisters and the Attorney General in the Murphy Petition proceeding. Gackstetter explicitly sought indemnity in connection with his settlement with the Sisters arising out of the Murphy Petition against him, and he also claimed for breach of fiduciary duty, professional negligence, misrepresentation, and breach of the attorney-client retainer agreement.

Frawley asserted as an affirmative defense the bar of section 877.6. Frawley had demurred, and later moved for summary judgment and summary adjudication, on the basis of the good faith settlement, but the trial court rejected that contention.[5] Frawley also cross-claimed for indemnity for the amount he paid to the Sisters in settling their action against him.

A jury found Patrick Frawley liable for professional negligence, breach of fiduciary duty, fraud, and breach of contract and assessed damages in the amount of $289,000 for economic damages and $3,000 for emotional distress. The jury found that Gackstetter was responsible, in part, for his own damages, requiring a 10 percent reduction in the economic damages. The jury

---

[5] We take judicial notice of the trial court's minute order in the superior court file. Although Gackstetter in his separate statement of undisputed facts notes that the good faith settlement only involved Patrick Frawley, he does not assert that only Patrick Frawley could take advantage of the good faith settlement if it were applicable. Patrick Frawley's law firm's liability was based on Patrick Frawley's actions, and the jury found that Brauer, who was in the firm, had not committed any wrongdoing.

also found that, as to Frawley's cross-claims for indemnity for his $104,000 payment for the benefit of the Sisters, Gackstetter was 50 percent at fault in connection with the Sisters' damages.

Gackstetter filed a posttrial motion for directed verdict on Frawley's cross-complaint as it pertained to contributory negligence and indemnity. The trial court denied the motion and entered judgment on special verdicts against Frawley for $211,000. The trial court declined to award Gackstetter any attorney fees. Gackstetter had claimed attorney fees in the amount of $521,612.50 based on a special verdict finding that Frawley had breached the retainer fee agreement with Gackstetter. That agreement contained an attorney fees clause.

Frawley appeals, claiming that the good faith settlement in the Sisters' action against him barred Gackstetter's recovery. He asserts that he can appeal from the denial of his motions for summary judgment and summary adjudication, by which he invoked the good faith settlement. He contends that all of Gackstetter's causes of action were, in effect, disguised indemnity claims and therefore barred. He also argues that there could be no contract claim.

Gackstetter cross-appeals, asserting that Frawley is not entitled to the indemnity that resulted in the reduction of damages by the jury based on a percentage of the amount Frawley paid in settlement of his case with the sisters. Gackstetter contends that there can be no contributory negligence in connection with an intentional tort, that Frawley is not entitled to equitable indemnity, and that Gackstetter is entitled to attorney fees because he prevailed in a claim based on a contract that included an attorney fees clause.[6]

B. *Specific Allegations, Statements of Undisputed Facts, and Supporting Evidence in the Instant Action*

1. *Gackstetter's Allegations*

In the general allegations incorporated into all of the causes of action in Gackstetter's first amended complaint, Gackstetter alleged that Frawley had conveyed the Marlin Place Property to the wrong trust; Frawley represented him in connection with Gackstetter's position as trustee of the trusts and gave

---

[6] The attorney fees order is appealable. (§ 904.1, subd. (a)(2); *Laraway v. Pasadena Unified School Dist.* (2002) 98 Cal.App.4th 579, 582, fn. 3 [120 Cal.Rptr.2d 213].)

"legal guidance" to him in the administration of the trusts; Frawley concealed from him the mistaken placement of the Marlin Place Property in the wrong trust; Frawley "knew or should have known that [Gackstetter] would be sued and be subject to possible civil and criminal liability for his trust management under the supervision of [Frawley]"; Frawley failed to cause the preparation and retention of records for the trusts; Frawley's legal advice regarding the trusts was negligent; Frawley confirmed to Gackstetter that he, Gackstetter, was properly performing his duties as trustee; and Frawley's advice and false representations were made for the purpose of preventing Gackstetter and others from discovering Frawley's errors regarding the trusts.

Gackstetter alleged causes of action for breach of fiduciary duty and fraud, and for each of these causes of action he alleged damages to him and the Charitable Trust. He also alleged a cause of action for negligent misrepresentation. Both the fraud and negligent misrepresentation causes of action are based on misrepresentations concerning the trusts and Gackstetter's duties as trustee. In addition, Gackstetter alleged causes of action for "Implied Indemnity" and "For Equitable Indemnity on a Comparative Fault Basis" in which he claimed he is entitled to damages arising out of the Murphy Petition against him. In his last two causes of action, Gackstetter alleged that Frawley breached agreements to defend him in the Murphy Petition proceeding and to advise him with regard to the administration of the trusts.

## 2. *Summary Judgment Contentions of Undisputed Facts*

Frawley stated in his statement of undisputed facts in support of his summary judgment and summary adjudication motions that "Gackstetter and the Frawley defendants are joint tortfeasors with regard to the claims by the Sisters against them in that it was alleged that both Gackstetter and the Frawley defendants caused the Sisters to not receive the Marlin Place Property free and clear." Although Gackstetter disputes this statement in his statement regarding undisputed facts, the dispute was only on the grounds that he did not draft the documents, the Sisters sued Frawley for negligence, the Sisters' action against Frawley did not mention Gackstetter,[7] and the Murphy Petition against Gackstetter did not mention Frawley. This response by Gackstetter, however, does not refute the assertion that Frawley and Gackstetter were joint tortfeasors based on the allegations in the two proceedings brought by the Sisters and the allegations in Gackstetter's first amended complaint.

Also in his statement of undisputed facts, Frawley stated that "the only damages sought by Gackstetter in his capacity as an individual and as trustee

---

[7] In fact, although Gackstetter was not a named party, there were allegations referring to Gackstetter in that action.

of the Agnes Gordon Trust [Sisters' Trust] in connection with [each of the causes of action] are damages he incurred in the defense and settlement of the *Murphy v. Gackstetter* action." In response, Gackstetter stated that the fact is "misleading in that it omits damages to plaintiff, individually, incurred because of the involvement of the Attorney General's Office . . . and based upon his reliance on the advise [*sic*] and instructions of Defendant's [*sic*] in his management of the trust for twelve years and in his defense of the Sisters litigation; Forged Documents in Probate." In some responses, Gackstetter said the Murphy Petition proceeding and the Murphy lawsuit against Frawley were not related or that he was damaged by "Concealed Trust Assets."

### 3. *Evidence*

In support of his motion for summary judgment, Frawley submitted the Murphy Petition against Gackstetter, in which Murphy sought to compel Gackstetter as trustee to file accountings; transfer the Marlin Place Property to the Sisters' Trust, and, in turn, to the beneficiaries under Agnes Gordon's will; and to obtain a surcharge order and imposition of a constructive trust because of alleged errors Gackstetter committed as trustee. Frawley also submitted the first amended complaint in the Sisters' action against Frawley in which it was alleged that he negligently transferred the Marlin Place Property to the wrong trust, failed to disclose the error, and misrepresented where the property should have been transferred. Plaintiffs further alleged in that amended complaint that Frawley represented the trust estate and that the trustee and Gackstetter had misrepresented the facts about the Marlin Place Property and had obtained monies by placing a deed of trust on the property.

Gackstetter was not named a party in the Sisters' action against Frawley, but the complaint in that action contained a reference to the Murphy Petition against Gackstetter. Other than the substitution of Ms. Murphy as administrator for a recently deceased trust beneficiary, all of the plaintiffs (Sisters) in the legal malpractice action against Frawley were essentially the same as the petitioners in the Murphy Petition against Gackstetter.

Frawley's other evidence consisted of his settlement of the Sisters' lawsuit against him, the good faith settlement, and the application for order and order regarding approval of a settlement of the Murphy Petition against Gackstetter. The application for the good faith settlement in the Sisters' action against Frawley included the settlement agreement between Frawley and the Sisters. In that settlement agreement, which referred to Frawley's representation of Agnes Gordon in preparing the estate planning documents, the parties released each other generally from all claims "relating to or arising" from that

representation. The good faith settlement order declared that the settlement agreement described in the application "was made and entered into in good faith . . . within the meaning of and effect of *Code of Civil Procedure § 877.6.*"

In the application for the order settling the Murphy Petition against Gackstetter, among the recitals are the following: Frawley's negligence and concealment in connection with the trusts; Frawley's advice to Gackstetter "in these proceedings, that caused the Petitioners to be unaware of the loss of their rights and interest in and to [the Marlin Place Property] until recently"; Gackstetter as trustee "contends that he has vigorously defended the trust"; Gackstetter "further asserts that he has expended Trust and personal funds and efforts to maintain and improve [the Marlin Place Property]"; and the Attorney General filed his own petition in the proceeding against Gackstetter for an accounting and to surcharge the trustee. The settlement provides that Gackstetter shall, as trustee, transfer the Marlin Place Property from the Charitable Trust to the Sisters Trust and shall pay $104,000 to the beneficiary of the deed of trust on the Marlin Place Property and that the beneficiary of the deed of trust is to execute a full reconveyance of the deed of trust on the property. Frawley also submitted in evidence the settlement that was later completed between Gackstetter and the Attorney General. A principal term of that settlement was that Gackstetter waived all claims he had for fees and loan repayments.

Gackstetter, in opposition to the summary judgment and summary adjudication motions, submitted documents from Agnes Gordon's probate case. He also introduced documents showing Frawley's representation of Gackstetter and Frawley's preparation of the trust estate documents in issue.

## III. DISCUSSION

### A. *Appealability*

Frawley contends that the propriety of the denial of a summary judgment[8] may be raised in an appeal from a judgment after a trial. Gackstetter asserts that by not seeking a writ of mandate as provided by section 437c, subdivision (m)(1),[9] Frawley has forfeited the right to challenge the denial of a summary judgment motion.

---

[8] Reference to summary judgment includes summary adjudication.

[9] Section 437c, subdivision (m)(1) states in part: "A summary judgment entered under this section is an appealable judgment as in other cases. Upon entry of any order pursuant to this section, except the entry of summary judgment, a party may, within 20 days after service upon him or her of a written notice of entry of the order, petition an appropriate reviewing court for a peremptory writ."

Section 437c, subdivision (m)(1) provides that entry of a summary judgment is appealable and that any order entered pursuant to the summary judgment statute may be challenged by a petition for peremptory writ. The case law has not been uniform on the reviewability of a denial of summary judgment on an appeal from a final judgment. In *Lackner v. LaCroix* (1979) 25 Cal.3d 747, 753 [159 Cal.Rptr. 693, 602 P.2d 393], the Supreme Court stated that, "[a]n order denying partial summary judgment is a nonappealable order although reviewable on appeal from the final judgment." At that time, however, there was no provision in the summary judgment statute for a peremptory writ.[10] (See also *Aas v. Avemco Ins. Co.* (1976) 55 Cal.App.3d 312, 323–324 [127 Cal.Rptr. 192]; *Whitmire v. City of Eureka* (1972) 29 Cal.App.3d 28, 32, fn. 3 [105 Cal.Rptr. 185].) In *Sturm, Ruger & Co. v. Superior Court* (1985) 164 Cal.App.3d 579, 582 [210 Cal.Rptr. 573], decided after the summary judgment statute was amended to provide for a writ procedure, the court stated that the denial of a petition for a writ challenging a denial of a summary judgment does not "preclude petitioner from raising the issue in an appeal from an adverse final judgment in the event real parties prevail in the Superior Court." In *Coy v. County of Los Angeles* (1991) 235 Cal.App.3d 1077, 1082, footnote 2 [1 Cal.Rptr.2d 215], this division (Turner, J.) said, "An order denying a summary judgment is an interlocutory order [citation] which may be reviewed on direct appeal from a final judgment entered after a trial. [Citations.]" (See § 906 ["Upon . . . appeal . . . the reviewing court may review . . . any intermediate ruling . . . which involves the merits or . . . which substantially affects the rights of a party . . ."].)

In *Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 836 [16 Cal.Rptr.2d 38] (*Waller*), the court recognized "as a general proposition, that an order denying a motion for summary judgment, while not directly appealable, may be reviewed on appeal from the final judgment." It added, however, that no case has "consider[ed] the merits of the order denying summary judgment as a basis to reverse a judgment entered after the trial on the merits." (*Ibid.*) The court refused to do so, limiting its opinion "to situations in which a party moves for a summary judgment on the ground that there is no triable issue of fact, the motion is denied, and the same questions raised by the motion are then decided adversely to the unsuccessful moving party after a trial on the merits which is itself free from prejudicial error." (*Ibid.*) It noted, "We do not intend by this decision to imply that review of such orders is never possible." (*Ibid.*) But in *Sierra Craft, Inc. v. Magnum Enterprises, Inc.* (1998) 64 Cal.App.4th 1252, 1256 [75 Cal.Rptr.2d 681], the court said the denial of a summary judgment is reviewable only by a timely writ petition and not by an appeal.

---

[10] The provision was added by Statutes 1983, chapter 490, section 1, page 1990.

One authority stated, "A decision based on less evidence (i.e., the evidence presented on the summary judgment motion) should not prevail over a decision based on more evidence (i.e., the evidence presented at trial)." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (2004) ¶ 8:168.10, p. 8-114.) That authority added, "it is difficult to imagine a scenario where error in the denial of summary judgment would cause prejudice at trial." (*Id.* at ¶ 8.168.11, p. 8-115.)

Gackstetter points to cases under section 877.6,[11] the good faith settlement statute, stating that the provision for a writ procedure in that statute is exclusive. (See *O'Hearn v. Hillcrest Gym & Fitness Center, Inc.* (2004) 115 Cal.App.4th 491, 498 [9 Cal.Rptr.3d 342]; *Main Fiber Products, Inc. v. Morgan & Franz Ins. Agency* (1999) 73 Cal.App.4th 1130, 1137 [87 Cal.Rptr.2d 108].) Yet, the court in *Maryland Casualty Co. v. Andreini & Co.* (2000) 81 Cal.App.4th 1413 [97 Cal.Rptr.2d 752], concluded that, even though a good faith settlement determination can be reviewed by prejudgment writ, it can also be reviewed by postjudgment appeal. (See *Wilshire Ins. Co. v. Tuff Boy Holding, Inc.* (2001) 86 Cal.App.4th 627 [103 Cal.Rptr.2d 480].) In view of the conflict of authorities, the analogy to section 877.6, subdivision (e) is not helpful.

Although the denial of a summary judgment after a trial normally would be harmless error, there can be exceptions. (*Waller, supra,* 12 Cal.App.4th at p. 836.) The facts here result in one of those exceptions. The good faith settlement order was not made in this case. Frawley, having obtained that good faith determination in another case was, of course, in no position to seek a writ in that case. In this case, he raised the effect of the good faith settlement by way of demurrer and summary judgment. Frawley could have sought a writ, but the language of section 437c, subdivision (m)(1) providing for a writ procedure contains the permissive word "may." (Cf. *Wilshire Ins. Co. v. Tuff Boy Holding, Inc., supra,* 86 Cal.App.4th 627, 637 ["may" used in § 877.6, subd. (e) for writ does not preclude appeal].)

The good faith settlement could have been raised in various ways in the instant action. That it was done by summary judgment should not preclude a party from appealing from a trial court's determination that a good faith settlement in another action does not bar a claim. Accordingly, in this case,

---

[11] Section 877.6, subdivision (e) states: "When a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate. The petition for writ of mandate shall be filed within 20 days after service of written notice of the determination, or within any additional time not exceeding 20 days as the trial court may allow."

the issue of the good faith settlement defense that was raised by a summary judgment motion, which motion the trial court denied, may be a basis for this appeal of the judgment.

### B. *Standard of Review*

On appeal from a summary judgment, we make "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222 [38 Cal.Rptr.2d 35].) The same standard should apply to review of a denial of summary judgment. Questions of law "are reviewed under a nondeferential standard, affording plenary review." (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800 [35 Cal.Rptr.2d 418, 883 P.2d 960].) Although the trial court's determination of the good faith or lack of good faith of a settlement is reviewed for an abuse of discretion (*Mattco Forge, Inc. v. Arthur Young & Co.* (1995) 38 Cal.App.4th 1337, 1349 [45 Cal.Rptr.2d 581]), whether a determination of a good faith settlement applies to a party or claim is a question of law that we review de novo.

### C. *Good Faith Settlement*

#### 1. *General Principles*

Section 877.6 provides in pertinent part, "(a)(1) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors . . . [¶] . . . [¶] (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault."

Section 877 abrogated the common law rules that precluded the contribution among joint tortfeasors and that a release given to one joint tortfeasor would release all joint tortfeasors. (*Topa Ins. Co. v. Fireman's Fund Ins. Companies* (1995) 39 Cal.App.4th 1331, 1337 [46 Cal.Rptr.2d 516] (*Topa*).) The Supreme Court in *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], held that "a concurrent tortfeasor may seek

partial indemnity from another concurrent tortfeasor on a comparative fault basis" but that "a tortfeasor who has entered into a 'good faith' settlement . . . with the plaintiff must also be discharged from any claim for partial or comparative indemnity that may be pressed by a concurrent tortfeasor." (*Id.* at p. 604, citation omitted.) That conclusion was codified in section 877.6. The Supreme Court has suggested that section 877.6, subdivision (c) should be interpreted so as to encourage settlements. (*Far West Financial Corp. v. D & S Co.* (1988) 46 Cal.3d 796, 810 [251 Cal.Rptr. 202, 760 P.2d 399] (*Far West*).)

■ Under section 877.6, if the injured party settles with one of the parties alleged to have caused its damages and the settlement is confirmed to be in good faith "other joint tortfeasors (parties who the injured party also alleges to have caused its damage) are barred from bringing equitable indemnity or contribution actions against the settling tortfeasor. This result achieves the primary objectives of section 877.6: promoting the 'equitable sharing of costs among the parties at fault and the encouragement of settlements.' " (*Maryland Casualty Co. v. Bailey & Sons, Inc.* (1995) 35 Cal.App.4th 856, 877 [41 Cal.Rptr.2d 519].) A settling tortfeasor may raise the section 877.6 bar of another tortfeasor's claim in a separate action, and this can be by demurrer and summary judgment. (See *Britz, Inc. v. Dow Chemical Co.* (1999) 73 Cal.App.4th 177, 182 [86 Cal.Rptr.2d 188] (*Britz*).)

■ The Supreme Court has further held that a good faith determination bars all claims for indemnification or contribution, including claims for total as well as partial equitable indemnity. (*Far West, supra,* 46 Cal.3d at pp. 815–816; *Bay Development, Ltd. v. Superior Court* (1990) 50 Cal.3d 1012, 1031, fn. 11 [269 Cal.Rptr. 720, 791 P.2d 290].) As discussed *post,* claims for indemnification can include other claims not labeled as indemnity claims, but that in reality are "disguised" indemnity claims. (*Norco Delivery Service, Inc. v. Owens-Corning Fiberglas, Inc.* (1998) 64 Cal.App.4th 955, 964 [75 Cal.Rptr.2d 456] (*Norco*).) In order to be declared a good faith settlement, the settlement must be within the "reasonable range" of the settling tortfeasor's share of liability for the plaintiff's injuries. (*Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 499 [213 Cal.Rptr. 256, 698 P.2d 159]; *Bay Development, Ltd. v. Superior Court, supra,* 50 Cal.3d at pp. 1034–1035.)

(a) *Joint Tortfeasors*

■ Joint tortfeasors are "*concurrent* tortfeasors (defendants whose independent negligence or other tortious acts have concurred to cause plaintiff's injury)" and "those *derivatively or vicariously liable* for the settling defend-

ants' acts." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2005) ¶ 12:925, p. 12(II)-76.) In *Turcon Construction, Inc. v. Norton-Villiers, Ltd.* (1983) 139 Cal.App.3d 280, 283 [188 Cal.Rptr. 580] (*Turcon*), the court said, "We presume the Legislature was aware of the modern use of the term 'joint tortfeasors' as embracing joint, concurrent and successive tortfeasors when section 877.6, subdivision (c) was drafted." Thus, under *Turcon*, when the negligence of both tortfeasors "concurred to produce the sum total of the injuries to the plaintiff," section 877.6 applies. (*Turcon, supra,* at p. 284.) And, the court in *Leko v. Cornerstone Bldg. Inspection Service* (2001) 86 Cal.App.4th 1109, 1115 [103 Cal.Rptr.2d 858] said, "Joint tortfeasors may act in concert or independently of one another. [Citation.]"

As noted by the court in *Topa, supra,* 39 Cal.App.4th at page 1341, "In many cases courts have construed the term 'joint tortfeasor,' as used in Code of Civil Procedure sections 877 and 877.6, quite broadly to apply not only to 'those who act in concert in causing an injury' [citation] but generally to 'joint, concurrent and successive tortfeasors' [citations], and even more generally to 'all tortfeasors joined in a single action' whose acts or omissions 'concurred to produce the sum total of the injuries to the plaintiff.' [Citations.]" (See also *Textron Financial Corp. v. National Union Fire Ins. Co.* (2004) 118 Cal.App.4th 1061, 1078 [13 Cal.Rptr.3d 586] ["Where tortious acts by separate persons produce the same indivisible injury, each person is liable for the whole loss even if they did not act in concert"]; *Newhall Land & Farming Co. v. McCarthy Construction* (2001) 88 Cal.App.4th 769, 773 [106 Cal.Rptr.2d 10] ["A joint tortfeasor includes joint, concurrent, and successive tortfeasors whose actions combine to cause the plaintiff's injury"]; *GEM Developers v. Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419, 431 [261 Cal.Rptr. 626]; *Kohn v. Superior Court* (1983) 142 Cal.App.3d 323, 329 [191 Cal.Rptr. 78] [actions of defendants combined to create an indivisible injury].)

By indicating that the good faith settlement applies to the "vicariously or derivatively liable tortfeasor" (*Far West, supra,* 46 Cal.3d at p. 815) and to "multiple tortfeasors" (*Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 110 [32 Cal.Rptr.2d 263, 876 P.2d 1062]), the Supreme Court suggested that the term joint tortfeasor as used in section 877.6 has a broad meaning.[12] "Joint tortfeasors" have been referred to as "two or more persons who are liable to the same person for the same harm. It is not

---

[12] See *Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 302 [216 Cal.Rptr. 443, 702 P.2d 601] ("the language of section 877 is significant—its drafters did not use the narrow term 'joint tortfeasors,' they used the broad term 'tortfeasors claimed to be liable for the same tort.' This *language was meant to eliminate the distinction* between joint tortfeasors and concurrent or successive tortfeasors [citation], and to permit broad application of the statute. [Citations.] Further, another section in chapter 1 [which includes section 877.6] expressly extends beyond application to joint tortfeasors: section 876, subdivision (b), applies to 'one or

necessary that they act in concert or in pursuance of a common design, nor is it necessary that they be joined as defendants." (Rest.2d Torts, § 886A, com. (b).)[13]

### (b) *Parties*

Section 877.6 applies to "an action in which it is alleged that two or more parties are joint tortfeasors." There is no reason why a Doe allegation—such as exists in the Sisters'· action against Frawley—does not satisfy the requirement of an allegation of "two or more" parties that are joint tortfeasors. That there are unknown or unnamed tortfeasors is a reason why a settling defendant would, by the good faith settlement procedure, seek to eliminate potential indemnity claims.

A settling tortfeasor's section 877.6, subdivision (c) good faith settlement determination discharges indemnity claims by other tortfeasors, whether or not named as parties, so long as the other tortfeasors were given notice and an opportunity to be heard. (*Britz, supra,* 73 Cal.App.4th at pp. 181, 184; *Wilshire Ins. Co. v. Tuff Boy Holding, Inc., supra,* 86 Cal.App.4th at pp. 638–644; see *Mid-Century Ins. Exchange v. Daimler-Chrysler Corp.* (2001) 93 Cal.App.4th 310, 314–315 [112 Cal.Rptr.2d 880]; *Singer Co. v. Superior Court* (1986) 179 Cal.App.3d 875, 895 [225 Cal.Rptr. 159] ["Having concluded that fundamental constitutional principles of due process require that a likely defendant, who was a stranger to the litigation at the time a determination of good faith was rendered, be afforded a new hearing on this issue . . . [and have] a concurrent right in such a later-named defendant to engage in discovery . . . to elicit evidence relevant to the *Tech-Bilt* factors"]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2005) ¶ 12:860, p. 12(II)-63 ["In addition, *due process* requires notice to other joint tortfeasors who are not presently parties to the action but whose rights may be affected by a 'good faith' determination (because § 877.6(c) bars indemnity claims of party *and nonparty* joint tortfeasors")], 12:926, p. 12(II)-76 ["a settling tortfeasor's § 877.6(c) good faith settlement determination discharges indemnity claims by other tortfeasors, whether or not named as parties to the action, *provided* they were given notice and an opportunity to be heard . . ."].)[14] So long as there is notice, a joint tortfeasor's indemnity claim against the settling tortfeasor will be barred by agood faith

---

more persons . . . liable solely for the tort of one of them or of another, as in the case of the liability of a master for the tort of his servant' ").

[13] The Restatement Third of Torts, section E18 notes that, "If the independent tortious conduct of two or more persons is a legal cause of an indivisible injury, each defendant is jointly and severally liable for the economic-damages portion of the recoverable damages . . . ."

[14] Here, the notice was by mail to Gackstetter's counsel. It was not given by "certified mail, return receipt requested" as required by section 877.6, subdivision (a)(2). We need not decide any issue concerning the service or service on a nonparty, because Gackstetter did not challenge

settlement "regardless of whether [the nonsettling joint tortfeasor] appeared and contested the determinations." (*Britz, supra*, 73 Cal.App.4th at p. 185.)

### (c) Claims Barred

■ A claim by a joint tortfeasor seeking neither indemnity nor contribution survives a good faith settlement under section 877.6. But a party may not avoid a section 877.6 motion by providing different labels for what are in reality indemnity or contribution claims. (*Cal-Jones Properties v. Evans Pacific Corp.* (1989) 216 Cal.App.3d 324, 327–328 [264 Cal.Rptr. 737] [court barred claim for breach of fiduciary duty as in reality an indemnity claim].) The words "indemnity" or "contribution" need not be used. It is the substance of the claim that is determinative. (*Ibid.; Norco, supra*, 64 Cal.App.4th at p. 964.) "Following a good faith determination, the judge doubtless may dismiss disguised or artfully pleaded claims for indemnity or contribution— i.e., causes of action purporting to state direct claims but which, in fact, seek to recover derivative damages." (*Norco, supra*, at p. 964; see *Ratcliff Architects v. Vanir Construction Management, Inc.* (2001) 88 Cal.App.4th 595, 607 [106 Cal.Rptr.2d 1] ["negligence claim is essentially a claim for indemnification" for purposes of good faith settlement consequences].)

In addition, a good faith settlement does not bar a claim that the trial court would not contemplate in determining the proportionate liability of a settling tortfeasor. A good faith settlement would not preclude a claim by a tortfeasor who committed a tort separate and distinct from the tort committed by the settling tortfeasor. Under this circumstance, there could be no right to indemnity. (*Turcon, supra*, 139 Cal.App.3d at p. 284.)

### 2. Good Faith Settlement Bars Claims in Instant Action

In this case, Gackstetter has alleged that the claims against him arose because of Frawley's acts and omissions. In an allegation incorporated into each cause of action against Frawley, Gackstetter alleged that Frawley improperly conveyed the Marlin Place Property into the wrong trust and failed to disclose this error to Gackstetter who was acting as trustee; as a

---

the sufficiency of the notice or assert he did not have actual notice. In his separate statement of facts he disputed notice but provided no reference to supporting evidence as required by section 437c, subdivision (b)(3). There is no such evidence. He does not raise on appeal an issue as to notice. It is noteworthy that the Sisters' case against Frawley and the Murphy Petition against Gackstetter were consolidated for discovery.

result, Frawley "knew or should have known that [Gackstetter] would be sued and be subject to possible civil and criminal liability for his trust management under the supervision of [Frawley]."

Both the derelictions of Gackstetter as trustee and those of Frawley as attorney for the trustee caused damages to the trusts and the Sisters as trust beneficiaries. In the Murphy lawsuit against Frawley, in which the good faith settlement order was made, the plaintiffs alleged that Gackstetter committed the same tortious acts as Frawley did and that plaintiffs had sought relief in the probate proceedings against Gackstetter for these and other acts. Gackstetter attributed his own conduct to Frawley's tortious acts as attorney for the trusts and trustees.

The uncontradicted evidence shows that Frawley and Gackstetter both committed tortious acts that " 'concurred to produce the sum total of the injuries to the plaintiff[s].' " (*Topa, supra,* 39 Cal.App.4th at p. 1341.) They each "contributed to or solely caused the single injury" to the plaintiff Sisters. (*Yamaha Motor Corp. v. Paseman* (1990) 219 Cal.App.3d 958, 970 [268 Cal.Rptr. 514].) Thus, for purposes of section 877.6, they were joint tortfeasors.[15]

Frawley's alleged misconduct and Gackstetter's lesser culpability because of reliance on negligent or fraudulent advice and vicarious liability do not render section 877.6 inapplicable. (*Far West, supra,* 46 Cal.3d at p. 815.) A "vicariously or derivatively liable tortfeasor, like any other minimally culpable tortfeasor" is subject to section 877.6 but has "substantial protection" by the requirement that the settlement by the more culpable tortfeasor be in good faith. (46 Cal.3d at p. 815.)

Gackstetter's claims in the instant action fulfill the requirement of section 877.6 that they be for indemnity. Two of Gackstetter's claims against Frawley explicitly are for indemnification. The other causes of action, although having different labels, are in effect for indemnification. Each of those causes of action is based on alleged damages Gackstetter suffered as a result of claims

---

[15] Cases involving contribution or indemnity among insurance carriers are inapplicable because they do not depend upon fault concepts, and the liability is based upon different insurance policies. (See *Hartford Accident & Indemnity Co. v. Superior Court* (1994) 29 Cal.App.4th 435, 441 [34 Cal.Rptr.2d 520]; *Topa, supra,* 39 Cal.App.4th 1331.) Also, cases involving separate torts not causing damages that are inherently indivisible or when there is no "nexus" between the two tortfeasors are not applicable. (*Yamaha Motor Corp. v. Paseman, supra,* 219 Cal.App.3d at p. 970; *Carr v. Cove* (1973) 33 Cal.App.3d 851 [109 Cal.Rptr. 449].)

by the trust beneficiaries. For such damages, Gackstetter seeks to be indemnified by Frawley, who represented Gackstetter as trustee. All of Frawley's acts and omissions were as attorney for the trusts, and therefore his torts were directed at, and damaged, the trusts and their beneficiaries. Likewise, Gackstetter's acts and omissions as trustee were directed at, and damaged, the trusts and their beneficiaries. According to Gackstetter, his liability and expenses were due to Frawley's acts and omissions as attorney for the trusts.

Gackstetter is, in effect, claiming indemnification from Frawley for all of Gackstetter's expenses for his liability as trustee arising from claims of the beneficiaries and the Attorney General. The total indemnity sought is relief that is encompassed within the bar of a good faith settlement. (*Far West, supra,* 46 Cal.3d 796.) Moreover, Gackstetter's claim for his attorney fees is considered "a form of implied equitable indemnity" that also can be barred by a good faith settlement. (*John Hancock Mutual Life Ins. Co. v. Setser* (1996) 42 Cal.App.4th 1524, 1533 [50 Cal.Rptr.2d 413].)

Gackstetter asserts that the Sisters' action against Frawley that was settled was limited to the erroneous transfer of the Marlin Place Property, while Gackstetter's action against Frawley involved claims that were not limited to the conveyance of the property. Gackstetter contends that he is claiming damages incurred because of his reliance on Frawley that resulted in claims against Gackstetter for mismanagement of the trusts, and because of the involvement of the Attorney General. Thus, Gackstetter maintains that the good faith settlement could not bar claims that do not concern the Marlin Place Property.

 The scope of a good faith settlement offer is normally addressed by the trial court determining the good faith of the settlement. That court has the "discretion to ferret out those claims that are in fact claims for indemnity" that would be barred by the good faith settlement. (*Cal-Jones Properties v. Evans Pacific Corp., supra,* 216 Cal.App.3d at pp. 327–328.) At the time of the good faith settlement order, the claims by the Sisters and the Attorney General had been made. (*Ibid.*) Gackstetter had notice and the opportunity to contest the scope of the settlement of the Sisters' action against Frawley. By not appearing at the good faith settlement determination, Gackstetter not only forfeited any opportunity to raise his lack of culpability in determining the good faith of the settlement, but also failed to protect claims he believes should not be covered by that settlement.[16]

---

[16] Allocations among claims are made in good faith determinations when a settling plaintiff retains claims against nonsettling defendants or when settling parties intend to obtain recoveries from nonsettling defendants. (§ 877, subd. (a); *Dillingham Construction, N.A., Inc. v. Nadel Partnership, Inc.* (1998) 64 Cal.App.4th 264, 282–287 [75 Cal.Rptr.2d 207].)

Nevertheless, we can determine in this proceeding the application and scope of the good faith order. We should do so in a way that encourages settlements. (*Far West, supra,* 46 Cal.3d at p. 810.)

The "negligence of both appellant and respondent[] concurred to produce the sum total of the injuries to the plaintiff[s] [Sisters]." (*Turcon, supra,* 139 Cal.App.3d at p. 284.) It is not necessary that all of the tortious acts that "concurred" to produce the plaintiffs' "sum total" injuries be alleged specifically in the action in which there was a good faith settlement to be barred by the good faith settlement.

There may be situations in which the joint tortfeasors have committed torts against the plaintiff that are sufficiently distinct from the torts and damages covered by a good faith settlement so that a claim by one of the tortfeasors for indemnification in connection with the distinct torts would not be barred by the good faith settlement. "[I]f there were in fact two separate and distinct torts committed, one by the appellant and one by the respondents, appellant would never, under any theory, be entitled to indemnity for damages attributable to its tortious conduct." (*Turcon, supra,* 139 Cal.App.3d at p. 284.)

Here, all of Gackstetter's claims involve the management of the trusts and thus either were alleged or could have been alleged in the action in which the good faith settlement occurred—the Sisters' action against Frawley. In that action, in which the good faith settlement order took place, the plaintiffs alleged that Frawley improperly conveyed the Marlin Place Property and failed to disclose or made misrepresentations about that conveyance. Significantly, the allegations in that action also included that Frawley represented the trust and that Gackstetter as trustee made various misrepresentations and misappropriated loan proceeds obtained by placing a mortgage on the Marlin Place Property. Thus, in the very case in which the good faith settlement order was made, Gackstetter was characterized as a joint tortfeasor.

In the instant action, Gackstetter incorporated into every one of his causes of action the allegations that Frawley conveyed the Marlin Place Property to the wrong trust; that Frawley failed to disclose this error; that Frawley "knew or should have known that plaintiff would be sued and be subject to possible civil and criminal liability for this trust management under the supervision [of Frawley]"; and that as a result of the improper conveyance, Gackstetter made improper expenditures. Most, if not all, of the damage Gackstetter alleged resulted from the improper transfer and concealment of the Marlin Place Property. It was that improper transfer and its concealment that were the basis

of the Sisters' action. Frawley's acts and omissions alleged by Gackstetter, in effect, constituted acts and omissions by Gackstetter and by Frawley as joint tortfeasors directed at the trusts and their beneficiaries. And the damages Gackstetter seeks to recover are in essence for indemnification from Frawley for these acts and omissions. The Sisters' respective actions against Frawley and Gackstetter did not specify any damages apart from the result of the wrongs related to the Marlin Place Property.

The Attorney General intervened in the Murphy Petition proceeding against Gackstetter to protect the Charitable Trust, and that intervention resulted from the allegations of the Sisters. The Attorney General alleged improper expenditures by the Charitable Trust, inter alia, those spent on the Marlin Place Property that did not belong in that trust. Other allegations concerned improper expenditures and accountings. The Attorney General in the case before us also intervened claiming that Frawley "aided and abetted Gackstetter in breaching his trust." Many of the alleged improper acts can be attributed to the incorrect placement of the Marlin Place Property in the Charitable Trust. Again, the placement of that property in the Charitable Trust was the subject of the Attorney General's claims.

Gackstetter's attorney, in what the trial court treated as argument, specified the damages and stated that they were "incurred as the result of the concealment/fraud of Defendants and the detrimental reliance of Mr. Gackstetter upon their legal advise [*sic*] and counseling for over twelve years." But Gackstetter's attorney also contended that Frawley's "ongoing assertions that the Marlin Place Property belonged to the Trust and that the Sisters had no interest therein" caused Gackstetter to expend trust funds on the property and refuse to deliver accountings. In effect, Gackstetter, in the summary judgment proceeding, asserted that much, if not all, of his damages could be attributed to Frawley's misrepresentations concerning in which trust the Marlin Place Property belonged—the very subject of the good faith settlement. Moreover, as noted, Gackstetter incorporated in each of his causes of action the allegations about Frawley's improper conveyance and concealment—allegations that were the basis of the case in which the good faith settlement occurred—the Sisters' action against Frawley.

■ The acts and omissions of Frawley and Gackstetter concurred to produce "the sum total of the injuries to the plaintiff[s] [Sisters]." (*Turcon, supra,* 139 Cal.App.3d at p. 284.) "The divisibility or indivisibility of injuries does not rest on the nature of the injuries but on the element of causation." (*Ibid.*) Both Gackstetter and Frawley caused the same injury to the Sisters. Gackstetter contended that Frawley was the cause of all of Gackstetter's improper conduct. All of Gackstetter's alleged damages from the operation of

the trusts, and actions against him by the trust beneficiaries and Attorney General result from the acts and omissions of Frawley and Gackstetter as joint tortfeasors.

Gackstetter's argument that the claims not specifically alleged in the settled action are not barred by the good faith settlement cannot, in any event, prevail because Gackstetter has not distinguished between causes of damages to the Sisters. He has not distinguished between, on the one hand, damages that may be a consequence of the claims asserted in the Marlin Place Property action against Frawley for which both Frawley and Gackstetter are liable as joint tortfeasors and that are subject to the good faith settlement and, on the other hand, any other damages he claims might not be subject to the good faith settlement. Accordingly, based on the allegations and evidence, we conclude that Gackstetter's claims in the instant action are, as a matter of law, subject to the bar of section 877.6.

Gackstetter asserts that Frawley's settlement was not in good faith. Gackstetter did not attempt to challenge the good faith of the settlement either when it was made or, if he could, before the trial court in this case. Thus, he is bound by that determination. (See *Britz, supra*, 73 Cal.App.4th 177.)

■ Based on the uncontradicted facts, all of Gackstetter's claims are for indemnification from a joint tortfeasor as that term is used in section 877.6. By broadly interpreting and applying section 877.6, we conclude that the good faith settlement in the Sisters' action against Frawley encompasses and bars all of Gackstetter's claims against Frawley in the instant action.

D. *Cross-Complaint*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV. CONCLUSION

Frawley's good faith settlement of the Sisters' action against Frawley bars Gackstetter's claims. The trial court erred by not granting Frawley's motion for summary judgment. Frawley's judgment on the cross-complaint is affirmed.[20]

---

[*]See footnote, *ante*, page 1257.

[20] In view of our opinion, we do not have to decide Gackstetter's claims in his cross-appeal regarding attorney fees and contributory negligence.

## V. DISPOSITION

The judgment is reversed as to Henry Gackstetter's recovery against defendants Patrick Frawley et al. and affirmed as to cross-complainants Patrick Frawley et al.'s recovery on their first amended cross-complaint against Henry Gackstetter in the amount of $52,000. The matter is remanded to the trial court to enter a judgment dismissing the amended complaint of Henry Gackstetter and awarding Patrick Frawley et al. $52,000 against Henry Gackstetter. Appellants and cross-respondents Patrick Frawley et al. shall recover their costs on appeal.

Turner, P. J., and Armstrong, J., concurred.

A petition for a rehearing was denied February 17, 2006, and the petition of appellant Henry C. Gackstetter for review by the Supreme Court was denied April 12, 2006, S141755. Werdegar, J., did not participate therein.