Filed 1/21/14 Harris v. Sequoia Ins. Co. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| GLENN HARRIS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>SEQUOIA INSURANCE COMPANY,<br><br>    Defendant and Respondent. | 2d Civil No. B247972<br>(Super. Ct. No. 56-2012-00410577-<br>CU-BC-VTA)<br>(Ventura County) |

Glenn Harris appeals a judgment of nonsuit and an order denying his motion for summary adjudication against Sequoia Insurance Company (Sequoia) for breach of a settlement agreement, tortious breach of the implied covenant of good faith and fair dealing, and fraud by false promise. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Harris is an officer and owner of Southern California Gold Products, Inc. (SCGP). SCGP provides armor solutions for military-type vehicles. Sequoia insured SCGP from 2007 to 2009 under a business insurance policy (the Policy). The Policy was later rescinded by agreement as explained below.

In 2007, Frederick Reva was struck and killed by a support vehicle during the 2007 Baja 1000 off-road automobile race. Harris participated in the race and one of his team members drove the support vehicle that killed Reva.

In an unrelated case that same year, American Defense Systems, Inc. sued SCGP for misappropriation of trade secrets. (*American Defense Systems, Inc. v. Southern California Gold Products, Inc.* (C.D.Cal. Feb. 21, 2008, No. CV 07-7134-CAS (AJWx) [nonpub. opn.] ("the ADSI case").) After investigating that claim, Sequoia concluded that SCGP had misrepresented the nature of its business activities in its insurance application when it described SCGP's only business as retail "Automobile Parts & Supplies Stores." On May 11, 2009, Sequoia notified SCGP of its decision to deny defense in the ADSI case and reserved its right to rescind the Policy based on material misrepresentation. We refer to the resulting coverage litigation as "the Zurich action." (*Southern California Gold Products, Inc. v. Zurich-American Insurance Group* (Super. Ct. Ventura County, No. 56-2009-00353066-CU-IC-VTA.)

On May 22, 2009, Frederick Reva's family sued SCGP, Glenn Harris, Daniel Wreesman, Cameron Thieriot, and others for wrongful death. (*Reva v. Wreesman* (Super. Ct. Sonoma County, No. SCV 243311 ("the Reva action").) The Reva family sued Harris, both as an officer of SCGP and in his individual capacity. They alleged that Harris and SCGP organized and financed the race team.

Sequoia and Harris now agree that Harris's involvement in the race was actually social and did not arise out of any business activities of SCGP. The team was owned and organized by Harris's friend, Cameron Thieriot.

Sequoia accepted the defense of SCGP and Harris in the Reva action with a reservation of rights. The reservation of rights letter stated, "Under the terms of the Business Liability coverage, that coverage is triggered where there is a claim for damages made against an insured in an insured capacity."

Harris was not insured by Sequoia in his individual capacity. The Policy defined the insureds to include SCGP's executive officers and directors, "but only with respect to their duties as [SCGP's] officers or directors."

Sequoia retained attorney Dwight Bishop to defend SCGP and Harris in the Reva action. A Sequoia representative testified at trial that Sequoia provided incidental defense of the claims against Harris in his individual capacity until it settled all potentially

2.

covered claims in December 2010.  Harris's personal attorney, Malcolm Tator, also monitored the Reva action on Harris's behalf.

In February 2010, Tator tendered Harris's individual defense to another carrier, State Farm, pursuant to his homeowner's policy and personal liability umbrella policy.  Tator wrote, "At present Mr. Harris is being defended through Sequoia Insurance, carrier for his company [SCGP].  The initial theory of the case was that the race was connected commercially to [SCGP].  In actuality, it was simply a social event.  Due to a phone message left on my answering machine, I take it that plaintiff's counsel now realizes that, and will switch his theory from Mr. Harris' company to Mr. Harris individually.  [¶] Accordingly, we therefore tender Mr. Harris' defense to State Farm . . . . [¶] . . . I do not know whether State Farm would wish to join in the retention of Mr. Bishop or prefer to associate counsel of its own."   State Farm refused to defend Harris in the Reva action.

In December 2010, Sequoia and SCGP agreed to settle the Zurich action.  Under the terms of the Zurich settlement agreement, the Policy would be rescinded.  Sequoia would refund the Policy premiums and forego any reimbursement claims, but Sequoia would continue to defend "the Sequoia Insureds" in the Reva action.

The Zurich settlement agreement provided, "The Parties acknowledge and agree that, as a result of the rescission of the Sequoia Policy contemplated in Section II, above, the Sequoia Policy is void *ab initio*, relieving Sequoia of any contractual obligation to defend or indemnify the Reva Action.  However, as and for valuable consideration for the promises exchanged herein, the Parties agree that Sequoia *will continue to defend the Sequoia Insureds* in the Reva Action pursuant to the June 16 and June 18, 2010 reservation of rights letters attached hereto as Exhibit C.  Sequoia shall continue this defense notwithstanding the rescission of the Sequoia Policy and with the understanding that Sequoia reserves its right to refuse to indemnify all or any portion of any judgment entered in the Reva Action on any applicable ground other than the grounds of or for rescission of the Sequoia Policy." (Italics added.)  "The Sequoia Insureds" were defined in recital H of the Zurich settlement agreement to mean "*SCGP and Glenn Harris (in his capacity as an*

3.

*officer or director of SCGP pursuant to the Sequoia Policy's 'Who Is an Insured'*
*provision).*" (Italics added.)

Tator represented Harris in the negotiation and drafting of the Zurich settlement agreement. Harris initialed recital H and signed the agreement. He testified that he did not understand that as a result he would be financially responsible for the defense of claims asserted against him individually.

Trial in the Reva action was to begin on January 14, 2011. On January 11, Sequoia settled all claims against SCGP and all claims against Harris in his capacity as an officer or director of SCGP for $25,000. Sequoia did not obtain a release of claims against Harris in his individual capacity. The release expressly excluded claims against Harris in his individual capacity. Harris testified that he did not attend the settlement negotiations.

The trial court continued the Reva trial because the Revas' counsel had a medical emergency. The remaining parties eventually settled. Bishop continued to defend Harris through trial and settlement, at Harris's expense. Harris testified that he personally paid Bishop $15,854.75 for his services from February 2011 through trial and settlement. A representative of Sequoia testified that, although she believed Sequoia had no obligation to defend Harris in his individual capacity after the Zurich settlement agreement, Sequoia paid Bishop's fees through February 17 to allow Harris and Bishop time to come to an agreement concerning fees and did not seek reimbursement for defense costs from Harris. Harris testified that he or SCGP paid Tator about $40,000. He testified that his wife paid Tator's bills with SCGP checks, but he reimbursed SCGP. He did not submit documentary proof that he reimbursed SCGP.

In August 2011, Harris was dismissed from the Reva action pursuant to a global settlement to which he contributed $75,000 by personal check. Cameron Thieriot and his carrier contributed $925,000.

Harris sued State Farm for bad faith refusal to defend him in the Reva action. Pursuant to a settlement agreement, State Farm paid him $140,000, consisting of $75,000 for his contribution, plus $5,625 in interest, $37,609.75 for attorney fees and costs of defense in the Reva action, and $1,765.25 for other costs.

Harris filed this action against Sequoia for breach of the Zurich settlement agreement, breach of the implied covenant of good faith and fair dealing, and fraud by false promise. Harris moved for summary adjudication on the grounds that it was undisputed that Sequoia had a duty to continue to defend him in the Reva action in his individual capacity under the terms of the Zurich settlement agreement. He argued that Sequoia had defended him as an individual before and after the Zurich settlement until January 11, 2011, and that it agreed to "continue" to defend its insureds.

The trial court denied Harris's motion for summary adjudication, finding that he had "not established" that he was a Sequoia insured under the Zurich settlement agreement and that he had "not established" that he was "a Sequoia insured in his individual capacity."

At trial, Harris presented the testimony of Sequoia's chief claims officer, Carola Hogan, his own testimony, and documentary evidence. After Harris rested, the trial court granted Sequoia's motion for nonsuit on the grounds that Harris had presented no evidence that Sequoia failed to do something it was required to do under the Zurich settlement agreement; no evidence that he personally suffered any out-of-pocket losses; and no evidence that Sequoia falsely promised to represent him in his individual capacity.

DISCUSSION

*Order Denying Summary Adjudication*

An order denying a motion for summary judgment, while not directly appealable, may be reviewed on appeal from the final judgment. (*Gackstetter v. Frawley* (2006) 135 Cal.App.4th 1257, 1268.) We independently assess the correctness of the trial court's ruling, applying the same legal standard as the trial court to determine whether Harris was entitled to summary adjudication as a matter of law. (*Id.* at p. 1270.) The trial court correctly concluded that Harris had not established as a matter of law that in his individual capacity he was a "Sequoia Insured" within the meaning of the Zurich settlement agreement. The agreement unambiguously defines "the Sequoia Insureds" to include Harris only in his capacity as an officer or director of SCGP. Harris argues that the words of the agreement required Sequoia to "[c]ontinue [w]hat [i]t [h]ad [b]een [d]oing."

5.

(Boldface omitted.) But the plain meaning of the words of the agreement only required Sequoia to "continue to defend the Sequoia Insureds," as "the Sequoia Insureds" were defined in the agreement. The court did not err when it denied Harris's motion for summary adjudication.

*Judicial Estoppel*

Harris argues that Sequoia is judicially estopped from prevailing on nonsuit because Sequoia argued there were triable issues of fact when it opposed Harris's motion for summary adjudication. (*People ex rel. Sneddon v. Torch Energy Services, Inc.* (2002) 102 Cal.App.4th 181, 189.) We disagree. In opposition to Harris's motion, Sequoia argued that Harris had not established in his moving papers as a matter of law that he was a "Sequoia Insured" in his individual capacity. In support of its motion for nonsuit, Sequoia argued that Harris had not produced any evidence at trial to prove that he was a "Sequoia Insured" in his individual capacity. Sequoia's positions were consistent.

*Judgment of Nonsuit*

A trial court may not grant a defendant's motion for nonsuit if the plaintiff's evidence would support a jury verdict in the plaintiff's favor. (*O'Neil v. Crane Co*., (2012) 53 Cal.4th 335, 347.) In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider credibility of witnesses. (*Ibid.*) The court must accept as true the evidence most favorable to plaintiff and disregard conflicting evidence. (*Ibid.*) The court must indulge every legitimate inference that may be drawn from the evidence in plaintiff's favor. (*Ibid.*) We are guided by the same rules on appeal from judgment of nonsuit. (*Ibid.*)

Harris contends that sufficient evidence would support a jury verdict in his favor because a jury could find that Sequoia was required by the terms of the Zurich settlement agreement to defend him in his individual capacity in the Reva action. We disagree.

It is true that when a liability insurance policy exists, the insurer owes a broad duty to defend its insured against any claims that create a potential for indemnity and that duty to defend may extend to incidental defense against claims that are not even

6.

potentially covered. "Once the defense duty attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim." (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081.) The insurer may later seek reimbursement from the insured for defense costs that can be allocated solely to the claims that were not potentially covered. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 48, 52-53.) Sequoia relinquished this right to reimbursement under the Zurich settlement agreement.

Here, no liability policy exists. The Policy was rescinded in December 2010. Harris's complaint in this action relies entirely on the Zurich settlement agreement. Harris does not allege the existence of an insurance policy or even refer to the Policy in his pleadings. In his first cause of action for breach of contract, Harris alleges that he was a "third-party beneficiary" to the Zurich settlement agreement between Sequoia and SCGP; that Sequoia provided a defense to him in his individual capacity before and after entering into that agreement; that Sequoia breached the settlement agreement went it stopped defending him on January 11, 2011; and that, as a result, he suffered $60,165.91 in attorney fees and $75,000 to settle the Reva action. In his second cause of action for breach of the implied covenant of good faith and fair dealing, Harris alleges that Sequoia "breached the covenant of good faith and fair dealing by settling with the Revas and cutting off plaintiff Glenn Harris' defense three days before trial by [¶] (1) Not getting a complete release for Glenn Harris, [¶] (2) Preferring one insured, SCGP, over another, Glenn Harris, [¶] (3) Bank-rolling Glenn Harris' opponent, namely the Revas, and [¶] (4) Not keeping Glenn Harris informed of settlement negotiations." But Harris does not allege that an insurance contract gave rise to the implied covenant, nor could he because the Policy was rescinded. The only alleged contractual basis for the implied covenant is the Zurich settlement agreement. In his third cause of action for fraud by false promise (added by amendment), Harris alleges that Sequoia promised in the Zurich settlement agreement to represent him in his individual capacity without the intention to do so.

7.

Sequoia is entitled to judgment because no evidence presented at trial would support a jury finding that the Zurich settlement agreement required Sequoia to defend Harris in his individual capacity. Although Sequoia previously provided Harris with an incidental defense to claims against him as an individual for which there was no potential coverage, Sequoia did not agree to continue to do so after the Policy was rescinded. In exchange for rescission, Sequoia agreed relinquish its claims for reimbursement, to refund the Policy premiums, and to "continue to defend the *Sequoia Insureds* in the Reva Action pursuant to the June 16 and June 18, 2010 reservation of rights letters attached hereto as Exhibit C." (Italics added.) "The Sequoia Insureds" were defined to include only "SCGP and Glenn Harris (in his capacity as an officer or director of SCGP pursuant to the Sequoia Policy's 'Who Is an Insured' provision)"; and Harris, represented by counsel, demonstrated his agreement when he signed the agreement and initialed the definition of "the Sequoia Insureds" in recital H.

Harris contends that he was entitled to a continuing defense as an individual because Sequoia necessarily referred to him as an insured in all capacities when Hogan wrote in an internal report that "the insured was not in a business capacity." Hogan testified at trial that she used the term "insured" to refer to Harris in his capacity as president of SCGP and that Harris was not individually insured. Harris could not have relied on the document because the undisputed evidence was that Harris had not seen any internal reports at the time the parties negotiated the Zurich settlement agreement.

Under the terms of the Zurich settlement agreement, Harris received the benefit of a continuing defense from Sequoia in his capacity as an officer of SCGP, notwithstanding a substantial risk that the court in the Zurich action might have rescinded the Policy as fraudulent, relieving Sequoia of any duties to him or to SCGP and exposing SCGP and Harris to reimbursement claims. The parties received what they bargained for under the agreement. Therefore, Sequoia is entitled to nonsuit on Harris's first cause of action for breach of the Zurich settlement agreement. There was no evidence from which a jury could conclude that Zurich failed to perform under the agreement.

Sequoia is entitled to nonsuit on Harris's second cause of action for breach of the implied covenant of good faith and fair dealing for the same reason. Moreover, Harris did not plead or prove the existence of an insurance policy to support his claims that Sequoia had a duty to Harris in his individual capacity to obtain a complete release, treat him equally to other insureds, or to keep him informed of settlement negotiations. Harris argues that the settlement agreement did not sever the insurance relationship between the parties, but the agreement stated that "the Sequoia Policy is void *ab initio*, relieving Sequoia of any contractual obligation to defend or indemnify the Reva Action."

Sequoia is also entitled to nonsuit on Harris's third cause of action for fraud by false promise because Harris did not present any evidence from which a jury could conclude that Sequoia promised in the Zurich settlement agreement to defend Harris in his individual capacity. Because each cause of action lacked proof of other essential elements, we do not reach the question of whether Harris presented evidence from which a jury could conclude he suffered damage.

DISPOSITION

The judgment and order are affirmed. Respondent shall recover costs on appeal.

<u>NOT TO BE PUBLISHED.</u>


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

9.

Charles R. McGrath, Judge

Superior Court County of Ventura

_____

Law Offices of Malcolm Tator, Malcolm Tator, for Plaintiff and Appellant.

Archer Norris, GailAnn Y. Stargardter, Erin M. Gallagher, for Defendant and Respondent.